768 A.2d 1079

**John WITHERSPOON, Appellant,**

v.

**CITY OF PHILADELPHIA, Appellee.**

Supreme Court of Pennsylvania.

Submitted Oct. 19, 1999.

Decided March 26, 2001.

Richard G. Freeman, for John Witherspoon.

Alan C. Ostrow, Philadelphia, for City of Philadelphia.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### *OPINION ANNOUNCING THE JUDGMENT OF THE COURT*

ZAPPALA, Justice

We granted allowance of appeal to consider the extent of the inquiry to be made regarding a plaintiff's efforts to serve process for purposes of determining whether the filing of a writ of summons tolled the limitation period for commencing

an action. We find no error in the decisions below and therefore affirm.

John Witherspoon alleges that he injured his foot when he slipped and fell on a loose shower drain at Holmesburg Prison on September 17, 1994. On March 15, 1995, in compliance with 42 Pa.C.S. § 5522, Witherspoon's counsel notified the City of Philadelphia of his claim. On September 12, 1996, counsel filed a praecipe for writ of summons and the prothonotary scheduled an arbitration hearing for May 14, 1997.

An attempt to serve the writ was unsuccessful. However, it appears that the process server did not, at that time, file either a "return of service" or a "return of no service". The original record contains a form captioned "Affidavit of Service" completed by the process server on April 11, 1997. The first part of the form reads:

I, Joel Rome, on the 11 day of Oct., 1996, did personally serve see below with a copy of the Summons in Civil Action 12:45 P.M. at the above (ADDRESS), pursuant to PA R.C.P. 400.1 relative to service of process for Phila. Cty. I verify that I am over 18 years of age and that the statements of this Return of Service are true, to the best of my knowledge, information and belief, and are made to the provisions of PA.C.S.A. 4904 relating to unsworn statements to authorities.

The second part of the form, which appears immediately below, contains a list of methods of service other than handing a copy of original process to the defendant himself, mirroring Pa.R.C.P. 402(a)(2). As completed by the process server, this section reads:

If service is not made on defendant(s), circle one of the following:

1.) Adult family member with whom defendant(s) resides. Relationship is_____.

2.) Adult in charge of defendant(s) residence, named_____. (Refused to give name_).

3.) Officer, manager or clerk in charge of defendant(s) place of business, named_____ (Refused to give name

4.) Manager/clerk of place of lodging in which defendant(s) reside(s), named_____. (Refused to give name_)
5.) OTHER: Receptionist stated that parties who normally accept were unavailable_____.

The form contained in the original record bears a stamp indicating that it was filed by the prothonotary on April 24, 1997. The copy of the form contained in the Appellant's Reproduced Record, apparently taken from the files either of counsel or of the firm employed to make service, lacks this stamp. However, a barely legible stamp located in a different area of the form seems to indicate: "RECEIVED 97 APR 15 AM 9:01 PRO PROTHY."

In any event, it appears that based on the title and appearance of the form, upon its filing the prothonotary entered a notation on the docket: "11–OCT–96 12:45:00 AFFIDAVIT OF SERVICE FILED OF SUMMONS BY PERSONAL SERVICE UPON DEFT. CITY OF PHILA." The next docket entry, dated "6–MAY–97", reads: "CORRECTIVE ENTRY. PLEASE NOTE THAT THE AFFIDAVIT OF SERVICE UPON THE CITY OF PHILA. DOCKETED ON OCTOBER 11, 1996 WAS DOCKETED IN ERROR AND SHOULD BE DOCKETED AS ATTEMPTED SERVICE NOT FOUND."

On May 7, 1997, counsel for Witherspoon filed a complaint, indicating that the action had been commenced by writ of summons on September 12, 1996, and that pursuant to Pa. R.C.P. 401(b)(5) the complaint was to be treated as the equivalent of a reissued writ. The complaint was served on June 3, 1997. The City filed preliminary objections asserting that the failure to serve the writ within thirty days as required by Pa.R.C.P. 401(a) or reissue it pursuant to Pa.R.C.P. 401(b)(1) "effectively end[ed] any extension of the two (2) year statute of limitations which expired on September 17, 1996."

The common pleas court sustained the preliminary objections and ordered the service stricken, effectively terminating Witherspoon's action on account of the statute of limitations. Citing *Lamp v. Heyman*, 469 Pa. 465, 366 A.2d 882 (1976), as

imposing "a good faith requirement upon plaintiffs to effect service," Opinion at 2, R. 21a, the court focused on the fact that Witherspoon made only one unsuccessful attempt to serve the writ of summons between September 1996 and June 1997.

In Commonwealth Court, Witherspoon argued that he should not be faulted for a lack of good faith effort because the reason the writ was not served was the process server's failure to inquire into the status of the City's agents for accepting service and his erroneous filing of a return of service. Witherspoon also argued that his incarceration, and the fact that the City was on notice of his intention to file a claim, were factors to be considered.

Commonwealth Court rejected these arguments, relying on *Nagy v. Upper Yoder Township,* 652 A.2d 428 (Pa.Cmwlth. 1994). In that case, the court stated that lack of good faith could be found even where the plaintiff did not intentionally delay notifying the defendant of the institution of the lawsuit; simple neglect or mistake could support a finding of failure to comply with *Lamp. Nagy* also held that the notice of intention to file suit against a government unit required by 42 Pa.C.S. § 5522 had no bearing on the inquiry. Such notice does not itself commence an action, and a plaintiff could change his mind and elect not to sue after having given such notice. A government unit having received the initial notice of intention, but not having been served with a writ or complaint within the limitation period, might well be said to have a reasonable expectation that it would not be subject to litigation. Commonwealth Court further held that Witherspoon's incarceration was of no moment, since he was at all times represented by counsel.

Witherspoon argues in this appeal that the common pleas court erred in failing to conduct a hearing, at which he would have had the opportunity to introduce evidence to meet his burden of showing a good faith effort to notify the City of the commencement of the action. He asserts that he would have been able to demonstrate that the neglect or mistake did not lie completely with him; his process server had attempted to serve the writ but it was not accepted because no authorized

agent was present at the Law Department to receive it. Witherspoon also asserts that he had obtained a deferral of a scheduled arbitration hearing due to his incarceration "with no recorded opposition on the part of the City." Appellant's Brief at 7. "Where such a waiting period was in effect and the City took no action," he argues, "it cannot be alleged that the plaintiff has stalled at all." *Id.*

■ The latter argument can be readily dismissed. The application for stay of the arbitration proceeding was filed on May 7, 1997, the same day the complaint was filed. A letter from the assistant city solicitor to Witherspoon's counsel dated May 6, 1997, which was attached to the application for stay in lieu of a response, indicated that the City "cannot agree to a deferment of the arbitration scheduled for May 14, 1997." It further advised that the City had no record of being served with the writ of summons, suggested that the process server's return of service was actually an affidavit of non-service, and stated that the assistant solicitor had "contacted the Prothonotary to clear-up the apparent discrepancy between the docket entries and the filings." [1] Thus, contrary to Witherspoon's contention, the stay of the arbitration hearing was not "unopposed" and the City cannot be said to have acquiesced in any delay. Indeed, as Witherspoon's application for stay of arbitration proceeding acknowledged, the City contested service of the writ even before the complaint was filed.

We next consider Witherspoon's argument that the common pleas court erred in not conducting a hearing. Because this argument can only succeed if the evidence that would have been produced at such a hearing could have affected the outcome, we will accept Witherspoon's "offer of proof" as true for the sake of argument, examining it in the context of the applicable rule.

Prior to *Lamp*, and before the adoption of the Rules of Civil Procedure, a rule had developed through case law regarding

---

1. We note that the date of the letter containing this statement corresponds to the date of the "corrective entry" in the docket. It would appear that the "return of service" referred to is the affidavit prepared by the process server and filed in April of 1997.

actions commenced by issuance of a writ of summons that allowed the plaintiff to "continue process to keep his cause of action alive" by reissuing the writ within a period of time equivalent to the statute of limitations applicable to the cause of action. *Zarlinsky v. Laudenslager,* 402 Pa. 290, 167 A.2d 317, 319 (1961). The filing of the praecipe within the statute of limitations commenced the action, and reissuance of the writ kept the action alive for another "equivalent period," whether service was made or even attempted. The purpose of the rule identifying the filing of the praecipe as the commencement of the action, without regard to when the prothonotary actually issued the writ or the sheriff served it, was "to free the plaintiff from the risk that the statute of limitations may bar him if he acts in time, but someone else fails to act in time." *Lamp,* 366 A.2d at 887, quoting *Salay v. Braun,* 427 Pa. 480, 235 A.2d 368, 371 (1967).

*Lamp* represented a first step toward curbing the potential for abuse inherent in this rule. It had apparently become common for counsel to file a praecipe for writ of summons but instruct the prothonotary not to deliver the writ to the sheriff for service. Acknowledging that this practice was consistent with the letter of the rule stated in *Salay* but not with its purpose, we disapproved the practice and changed the rule prospectively pursuant to our supervisory power. We stated that in actions instituted after the date of the *Lamp* decision, "a writ of summons shall remain effective to commence an action only if the plaintiff refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion." *Id.* at 889. We further indicated that "a plaintiff should comply with local practice as to delivery of the writ to the sheriff for service." *Id.*

A decade later, in *Farinacci v. Beaver County Industrial Development Authority,* 510 Pa. 589, 511 A.2d 757, 759 (1986), we stated that "*Lamp* requires of plaintiffs a good-faith effort to effectuate notice of commencement of the action. Although this good-faith requirement is not apparent from a reading of the rule itself, we interpret the rule mindful of the context in which it was announced." *Id.* This context was identified in

the next sentence by quoting from *Lamp* that our purpose there was "to avoid the situation in which a plaintiff can bring an action, but, by not making a good-faith effort to notify a defendant, retain exclusive control over it for a period in excess of that permitted by the statute of limitations." 366 A.2d at 889.

The facts in *Farinacci* were that a praecipe for writ of summons was filed on the last day permissible within the statute of limitations. The prothonotary issued the writ the following day, but plaintiffs' counsel misplaced the file and thus did not request the sheriff to serve the writ or pay for such service. Although the file was found several days later, counsel forgot to take the necessary steps to effectuate service, and the original writ was never served. Approximately one week after the original writ expired, counsel had it reissued and all defendants were served within the next two weeks. We affirmed the common pleas court's dismissal of the action. We determined that the plaintiffs "failed to provide an explanation for counsel's inadvertence which could substantiate a finding that plaintiffs made a good-faith effort to effectuate service of the writ." 511 A.2d at 760.

█ This case presents yet another fact pattern in which a writ was not served. As indicated in *Farinacci*, "[I]n each case, where noncompliance with *Lamp* is alleged, the court must determine *in its sound discretion* whether a good-faith effort to effectuate notice was made." *Id.* at 759 (emphasis added). Accordingly, the court's decision is reviewed for abuse of discretion.

Like *Farinacci*, the writ in this case was not served within thirty days as required by Pa.R.C.P. 401(b), and by the time service was made the limitation period had expired. Unlike *Farinacci*, in this case counsel delivered the writ to a process server, who made an attempt to serve it in timely fashion.[2] In *Farinacci*, we found no abuse of discretion in the conclusion that a good-faith effort was lacking where the delay was

2. It would appear that the failure to reissue or make additional attempts to serve the writ between October of 1996 and April of 1997 was due to a mistaken belief that service had already been made.

attributable only to counsel's inadvertence and faulty memory. In this case, the "inadvertence" which allowed the thirty days to lapse without service having been made is attributable to the process server's failure to make additional attempts until service was made, his failure to make and file a return of no service "forthwith" as required by Rules 405(a) and (e), and/or counsel's failure to promptly ascertain the results of the process server's efforts. The question may thus be considered as whether the one attempt at service is a sufficient basis to distinguish this case from *Farinacci*.

To address this question, it is helpful to reflect again on the rationale underlying the *Lamp* rule, as reiterated and refined in *Farinacci*. Although an action may be "commenced" by filing a praecipe for writ of summons, until this original process is served the defendant remains unaware that he has been sued. It would be inherently unfair, as well as contrary to the purposes of statutes of limitation, to permit the limitation period to be tolled without the defendant being apprised that he might continue to be subject to liability. Thus in *Lamp* we gave added significance to the link between the praecipe for issuance of the writ and the requirement that the writ be served. In essence, we recognized service, or at least a good faith attempt at service, as a kind of condition subsequent that must be fulfilled to complete the commencement of the action begun by filing the praecipe. In *Farinacci*, we pursued the reasoning a step further, finding no distinction between an intentional withholding of service and a lack of service due to counsel's inadvertence.

We note once again that the general intent of these rules, as stated in *Salay*, is to allow a plaintiff to commence an action by filing a praecipe even at the very last moment before the limitation period expires and not be penalized because the "official" follow-up activity (issuance of the writ by the prothonotary, service of the writ by the sheriff) is not also completed within the limitation period. *Lamp* and *Farinacci* establish that any failure regarding follow-up activity that is attributable to the plaintiff or his agents, rather than public officials, falls outside this purpose. In this case, counsel elected to use

a private firm to make service rather than the sheriff. Witherspoon is bound by the actions of these agents (counsel and the process server) in the same way the plaintiff in *Farinacci* was bound by the actions (or inaction) of his attorney. Since the writ was not served within thirty days, the condition necessary to complete the timely commencement of the action was not fulfilled.

At this juncture, it becomes appropriate to reassess the wisdom of the "equivalent period" doctrine. In light of the changes in practice and in application of the rules beginning with *Lamp*, we fail to see any justification for the continuation of this common law doctrine in present circumstances. The notion that an action can be "kept alive" for the same period of time as the applicable limitations period although the defendant has not been made aware of the action, is inherently inconsistent with the requirement that the plaintiff make a good faith attempt to notify the defendant of the action. It is also contrary to the policy underlying limitations periods as a whole, as is particularly evident with respect to causes of action with limitation periods of four, five, and six years or more. *See* 42 Pa.C.S. § 5525 *et seq.*

■ As we have observed in another context,

Service of process is a mechanism by which a court obtains jurisdiction of a defendant, and therefore, the rules concerning service of process must be strictly followed. . . . Without valid service, a court lacks personal jurisdiction of a defendant and is powerless to enter judgment against him or her. . . . Thus, improper service is not merely a procedural defect that can be ignored when a defendant subsequently learns of an action against him or her.

*Cintas Corp. v. Lee's Cleaning Services, Inc.*, 549 Pa. 84, 700 A.2d 915, 917–18 (1997). Given the importance of service of original process in completing the progression of events by which an action is commenced, we deem it necessary that where that progression "straddles the line" of the limitation period the process must be served within the time allowed by the Rules of Civil Procedure or, if service cannot be made, the

process must be immediately and continually reissued until service is made.[3] Although Pa.R.C.P. 401(b)(2) states that "[a] writ may be reissued or a complaint reinstated *at any time* and any number of times" (emphasis added), this cannot be construed to permit the reissuance of a writ or reinstatement of a complaint to "revive" an action as to which the limitation period has expired.

For the foregoing reasons, we conclude that the common pleas court did not abuse its discretion in granting the City's preliminary objections. Accordingly, we affirm the order of the Commonwealth Court, which affirmed that order.

SAYLOR, J., files a concurring opinion in which CASTILLE and NIGRO, JJ., join.

NEWMAN, J., files a dissenting opinion in which CAPPY, J., joins.

SAYLOR, Justice, **concurring**.

I concur in the result based upon the plaintiff's failure to effectuate service upon the City of Philadelphia for a period of nine months. I agree with the dissent, however, that the lead opinion's approach that "the process must be immediately and continually reissued until service is made" in order to toll the applicable period of limitations is unduly restrictive. Further, the dissenting opinion aptly points out that the legislative prescriptions for limitations periods are generally tied to the commencement of actions and not to service of process. Perhaps for this reason, many other jurisdictions, including the federal government, have relied upon rule-based mechanisms in order to encourage diligent prosecution of complaints once

3. We note that Pa.R.C.P. 430(a) provides: "If service cannot be made under the applicable rule the plaintiff may move the court for a special order directing the method of service. The motion shall be accompanied by an affidavit stating the nature and extent of the investigation which has been made to determine the whereabouts of the defendant and the reasons why service cannot be made." Subsection (b)(1) details the requirements and form for service by publication. The availability of alternative methods of service as provided in the rules assures that the vigilant plaintiff need not be consigned to an endless cycle of reissuing and attempting personal service.

filed, without specifically modifying the tolling effect of the commencement of an action in relation to the applicable limitations periods. *See, e.g.,* Fed.R.Civ.P. 4(m); [1] *Scrimer v. Eighth Judicial Dist. Court,* 998 P.2d 1190, 1193–94 (Nev. 2000). Thus, prior to incorporating a new and fairly rigorous paradigm into our decisional law, I would find it preferable to refer the matter to the Civil Procedural Rules Committee for consideration of the merits of more moderate, rule-based options.

CASTILLE and NIGRO, JJ., join this concurring opinion.

NEWMAN, Justice, **dissenting.**

I dissent. The lead opinion's abolition of the "equivalent period" doctrine is such an unwarranted break from the common law, and will have such drastic consequences for practitioners, that I cannot subscribe to it.

The central question in this case is whether one attempt to serve a writ of summons that was issued within the limitations period can qualify as a "good faith" effort sufficient to avoid a statute of limitation defense, or whether a court may inquire into the subsequent efforts of the plaintiff to effect service in determining "good faith." The lead opinion has chosen the latter course, and, in doing so, has jettisoned a well-understood doctrine in favor of an uncertain and onerous standard, which now demands that process "be immediately and continually reissued until service is made." This elimination of the "equivalent period" doctrine ignores the statutory definition of when an action commences, provides insufficient guidance for courts and practitioners in determining whether the "good faith" standard has been satisfied, and disregards the other

---

1. Rule 4(m) defines the time in which service of federal process must be achieved, as follows:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

protections available to defendants where a plaintiff has been dilatory in effecting service.

Generally, statutes of limitation require that "[a]n action, proceeding or appeal must be *commenced* within the time specified in or pursuant to this chapter. . . ." 42 Pa.C.S. § 5501(a) (emphasis added). The legislature has defined the commencement of an action as, "[a] matter is *commenced* for the purposes of this chapter when a document embodying the matter is *filed* in an office authorized . . . to receive such document." 42 Pa.C.S. § 5503(a) (emphasis added). Nothing in Pennsylvania's statutes requires service on a defendant in order to satisfy the limitations period that governs a particular action—the only requirement is that the action be filed in the appropriate office. Nor does the rule of civil procedure regarding the commencement of an action state otherwise: "[a]n action may be commenced by filing with the prothonotary (1) a praecipe for writ of summons, or (2) a complaint." Pa.R.C.P. 1007. A plain reading of the statute and our rules of civil procedure, therefore, would lead one to believe that the mere act of obtaining a writ of summons or filing a complaint would be enough for a plaintiff to avoid a defense that the applicable statute of limitation bars his or her lawsuit.

What this Court did when it created the "equivalent period" doctrine was to halt a practice which, although technically in compliance with the statutory mandates for satisfaction of the statute of limitation, frustrated the goal of expeditious resolution of disputes. Because the statute allowed a plaintiff to toll the limitations period merely by *filing* his or her action, it was possible for a plaintiff to obtain a writ of summons by filing a praecipe and then do nothing to advance the litigation, thus sitting on the action indefinitely. This Court developed the "equivalent period" doctrine to limit this activity, and explained the operation of the rule in *Zarlinsky v. Laudenslager*, 402 Pa. 290, 167 A.2d 317 (1961):

> Prior to the adoption of the Pennsylvania Rules of Civil Procedure . . . we held on a number of occasions that, when a statute of limitations required an action to be brought within a specified period of time and such an action was

instituted by the issuance of a writ of summons against the defendant which was not served, the plaintiff could continue process to keep his cause of action alive by the issuance of an alias writ of summons, but that he had to do so within a period of time which, measured from the issuance of the original writ, was not longer than the time required by the applicable statute of limitations for the bringing of the action, and that subsequent pluries writs of summons had to be issued within the same period of time measured from the issuance of the preceding writ..... Thus it was, that this court imposed a rule of limitation for the continuing of process to keep alive an action by analogy to the statute of limitation for the bringing of the action.

*Id.* at 319–20 (citations omitted). Therefore, in the common-law rule described in *Zarlinsky,* a plaintiff who obtained a writ of summons was protected from the bar of the statute of limitation, but only for a period of time equivalent to the original limitations period.[1]

Although it afforded some protection to defendants against stale litigation, the *Zarlinsky* rule nevertheless tolerated an abusive practice that this Court sought to correct in *Lamp v. Heyman,* 469 Pa. 465, 366 A.2d 882 (1976): the failure to give the defendant actual notice of the lawsuit by obtaining a writ of summons but refusing to serve it. In *Lamp,* the plaintiff's cause of action accrued on September 1, 1967. Lamp's attorney instituted suit on August 28, 1969, within the two-year limitation period, by filing a praecipe for a writ of summons, however he instructed the prothonotary not to deliver the writ to the sheriff for service. He then reissued the writ two more times, but did not effectuate service until June 19, 1970. The trial court granted the defendants' preliminary objections that the statute of limitation barred Lamp's action, which the Superior Court affirmed per curiam. We reversed, noting that the *Zarlinsky* rule imposed no obligation on the plaintiff

---

1. For example, if a particular action was governed by a two-year statute of limitation, a plaintiff who obtained a writ of summons one year and eleven months from the accrual of his or her cause of action could keep the action alive for an additional two years from the issuance of the writ.

to attempt service of the defendant and that the mere filing of the writ of summons triggered the protection of the equivalent period. However, the Court announced a prospective modification of the *Zarlinsky* rule intended to halt this vest-pocket summons practice:

Our purpose is to avoid the situation in which a plaintiff can bring an action, but, by not making a good faith effort to notify a defendant, retain exclusive control over it for a period in excess of that permitted by the statute of limitations.

Accordingly, pursuant to our supervisory power over Pennsylvania courts, we rule that henceforth ... a writ of summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion.

*Lamp*, 366 A.2d at 889. We subsequently interpreted the *Lamp* rule as requiring that plaintiffs make "a good-faith effort to effectuate notice of commencement of the action." *See Farinacci v. Beaver County Indus. Dev. Auth.*, 510 Pa. 589, 511 A.2d 757, 759 (1986).

However, we have not defined the scope of *Lamp*'s inquiry into the plaintiff's good-faith efforts to serve the defendant. The specific problem that the present case addresses is whether a plaintiff who engages in a single good-faith effort to serve a writ of summons can wait for an additional period of time equal to the original limitations period in which to serve the defendant, or whether the plaintiff must make continuous efforts to serve the defendant beyond the one attempt in order to keep the action alive. By abolishing the equivalent period doctrine, the lead opinion has chosen the latter standard. In so doing, the lead opinion has gone too far in extrapolating the *Lamp* rule to impose an obligation on a plaintiff to make continuous efforts to serve the defendant in order to meet the "good faith" standard.

I believe that a correct reading of *Lamp* requires only that a plaintiff attempt in good faith to serve the *particular*

process issued within the limitations period and that, so long as the plaintiff acted in good faith by complying with the rules for service of process, he or she should benefit from the "equivalent period", i.e., protection from a limitations defense for a span of time equal to the limitations period that applies to the cause of action. The Third Circuit's opinion in *Patterson v. American Bosch Corp.*, 914 F.2d 384 (3d Cir.1990), best illustrates the interplay between a plaintiff's good-faith efforts to serve process and the equivalent period. In *Patterson,* the plaintiff was injured on December 4, 1986, at his workplace by a hydraulic cranking system manufactured by the defendant. His first attorney filed a writ of summons on August 31, 1987 (within the applicable two-year limitations period) and attempted to serve the writ unsuccessfully on September 8, 1987. On October 15, 1987, Patterson's attorney filed a praecipe for reissuance of the writ that he delivered to the sheriff on October 19, 1987, which resulted in another unsuccessful attempt to serve the defendant on November 5, 1987. For the next seventeen months, there was no effort to reissue the writ or to serve the defendant. On May 1, 1989, Patterson hired a new attorney, who reissued the writ on May 5, 1989 and successfully served the defendant by mail on May 26, 1989. The defendant removed the action to federal court and moved to dismiss the action based on the expiration of the statute of limitation. The trial court accepted the defendant's arguments that the seventeen-month delay between the last attempt to serve the writ and the eventual successful service "nullified the tolling effect of the filing of the praecipes in August and October of 1987." 914 F.2d at 387. A panel of the Third Circuit reversed, in a 2–1 decision, and held that "[i]n our view, the *Lamp* rule is satisfied once the plaintiff has complied in good faith with the procedural requirements and local practice for the issuance and service of a writ of summons. As long as the plaintiff files a praecipe for reissuance of the writ within the 'equivalent period,' we do not believe that *Lamp* dictates an additional affirmative duty to pursue service of process if the initial good-faith service attempt is unsuccessful." *Id.* at 391.

The interpretation of *Lamp* offered by the *Patterson* court is consistent with other Pennsylvania authorities on this question. *See* 2 Standard Pennsylvania Practice 2d, § 13:204; Goodrich Amram 2d, § 401(b):4. In the present case, the lead opinion goes beyond merely holding that this is an incorrect understanding of the *Lamp* rule. Instead, the lead opinion rewrites the *Lamp* rule, abolishes the equivalent period doctrine, and offers in its place the following standard:

> Given the importance of service of original process in completing the progression of events by which an action is commenced, we deem it necessary that where that progression "straddles the line" of the limitation period the process must be served within the time allowed by the Rules of Civil Procedure or, if service cannot be made, the process must be immediately and continually reissued until service is made.

Opinion Announcing the Judgment of the Court, p. 9. Now, for example, if a plaintiff obtains a writ of summons one year and 364 days after his or her cause of action accrued, where a two-year limitations period applies, and attempts—in good faith but unsuccessfully—to serve the defendant with that writ, that good faith effort will no longer afford the plaintiff another two years in which to attempt to serve the defendant.

Under the lead opinion's standard, a plaintiff now must reissue the writ "immediately and continually" until service is made. In cases where the plaintiff is attempting to serve the defendant in Pennsylvania, the writ of summons remains valid process for only thirty days. Pa.R.C.P. 401(a). If the plaintiff is unable to serve the defendant with that writ within thirty days of its issuance, he or she must seek reissuance of the writ "immediately." Whereas the equivalent period doctrine provided certainty as to how much time the plaintiff had in which to attempt to locate and properly serve a defendant, lower courts now must evaluate whether a plaintiff's actions to locate and serve the defendant, following an unsuccessful attempt to serve the defendant at the end of the limitations period, were sufficiently "immediate." If a writ is returned, "defendant not found", and the plaintiff waits a week before attempting to

ascertain the defendant's whereabouts, has he or she acted "immediately" enough to satisfy the lead opinion's standard? What about one month? The lead opinion's new standard will undoubtedly require additional litigation into the scope of plaintiff's efforts to locate and serve a defendant after an unsuccessful, but good faith, attempt to serve the originally-issued process.

Moreover, I do not believe that the "immediately and continuously" standard proposed by the lead opinion is necessary to protect defendants from a plaintiff's failure to serve a defendant in an expeditious manner. A defendant who claims that the plaintiff's delay in prosecuting the action caused him or her prejudice may seek a non-pros dismissal. *See Jacobs v. Halloran,* 551 Pa. 350, 710 A.2d 1098 (1998). The availability of a non pros dismissal serves two purposes: (1) it protects a defendant from having to defend a lawsuit in unfair circumstances where the plaintiff's delay has caused actual harm to the defense; (2) by requiring a showing of prejudice, it ensures that a plaintiff's action is not dismissed without an adjudication on the merits, thus denying a plaintiff his or her day in court, unless the plaintiff's own actions have deprived the defendant of a fair proceeding. The remedy of a non-pros dismissal, therefore, constitutes a more even-handed mechanism for policing a dilatory plaintiff than the standard now imposed by the lead opinion.[2]

---

**2.** I reiterate my position that once the praecipe for a writ of summons, or complaint, is filed as original process within the limitations period, the statute of limitation no longer applies. Rather, it has been the "equivalent period" doctrine described in *Zarlinsky,* and the modification of that doctrine in *Lamp,* which have placed additional restraints on plaintiffs and given defendants the ability to dismiss an action where the plaintiff failed to effect service in a timely fashion. Strictly speaking, however, that ability to dismiss the action has not been based on the bar of the statute of limitation, but has been based on the failure to satisfy the *Lamp* rule. *Cf. Zarlinsky,* 167 A.2d at 319 ("The [statute of limitation] is without direct bearing on the issue here involved since the plaintiffs filed their praecipe for writ of summons ...within two years of the happening of the accident. The statutory period of limitation becomes important, however, by *analogy* and furnishes the basis for the rule promulgated by the decision of this court with respect to the period of time within which a plaintiff must act to protect the efficiency of a writ of summons issued but not served.") (emphasis added). Accord-

Finally, the lead opinion's standard assumes that plaintiffs need the compulsion of another grounds for dismissal of their lawsuit in order to be encouraged to pursue service of the defendant vigorously. That assumption ignores the plaintiff's basic motivation in filing the action in the first place: obtaining a judgment. Of course, since service of process is necessary[3] to establish personal jurisdiction over a defendant, and because there can be no enforceable judgment from a court that lacks jurisdiction, it will always be in the plaintiff's interests to serve the defendant. The lead opinion's new rule creates a punitive standard that fails to take into account these basic mechanics of the litigation process and will, in all probability, result in an increase in the dismissal of lawsuits without the plaintiffs having had the benefit of their "day in court."

In the present matter, the record strongly indicates that the effort to serve the City with the process issued on September 12, 1996, was in good faith. Although Witherspoon used a private process server, rather than the sheriff's department, this practice is specifically permitted by our Rules of Civil Procedure for service within the City of Philadelphia. *See* Pa.R.C.P. 400.1(a)(1). According to the Affidavit of Service completed by the process server, there was an attempt to serve the City within the thirty days that the writ of summons remained valid process. *See* Pa.R.C.P. 401(a). Because the trial court ruled on the City's preliminary objections without allowing the parties to present testimony, however, we have nothing in the record to show whether the process server

ingly, I find the lead opinion's reliance on "the policy underlying limitations periods as a whole" inapposite, particularly where the legislature has not made actual service on the defendant a requirement for satisfaction of the statute of limitation.

3. Rule 430 provides that "[i]f service cannot be made under the applicable rule the plaintiff may move the court for a special order directing the method of service." Pa.R.C.P. 430(a). As the rule plainly states, however, this is an option of last resort for a plaintiff who has exhausted all reasonable efforts to locate the defendant for service. I fear the lead opinion's decision will encourage plaintiffs to apply for alternative service orders too hastily out of concern that any prolonged investigation into the whereabouts of a defendant will result in a failure to satisfy the lead opinion's "immediately and continuously" standard.

appeared at the proper location to serve the City, although Witherspoon claims that he complied with the rules governing service of a political subdivision. *See* Pa.R.C.P. 422(b). I believe the trial court should have permitted Witherspoon to have a hearing to support his contention that he believed service had been properly made and did not discover the failure to serve until a later time. At the very least, I would remand to the trial court to conduct a hearing regarding Witherspoon's service efforts with respect to the writ of summons issued on September 12, 1996, and to determine whether those efforts qualified as a "good faith" attempt to serve the City.

For these reasons, I dissent.

CAPPY, J., joins this Dissenting Opinion.