[J-54-2023] [MO:Donohue, J.]
**IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT**

| | | |
|---|---|---|
| BEVERLY FERRARO, | : | No. 1 WAP 2023 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered May 27, |
| | : | 2022 at No. 1291 WDA 2021, |
| v. | : | Affirming the Order of the Court of |
| | : | Common Pleas of Butler County |
| | : | entered July 23, 2021 at No. 2020- |
| PATTERSON-ERIE CORPORATION D/B/A | : | 10245. |
| BURGER KING AND BURGER KING | : | |
| CORPORATION, | : | ARGUED:  October 17, 2023 |
| | : | |
| Appellant | : | |

## DISSENTING OPINION

**JUSTICE WECHT**                                        **DECIDED: APRIL 25, 2024**

For almost fifty years, this Court has grappled with service of process.  The results of this wrangle have been less than satisfactory; outcomes turn upon case-specific facts whose idiosyncrasies often provide uncertain guidance to litigants and judges.  Greater clarity is warranted, if it can be had.

The question of whether service is proper is one that requires interpretation of Rule of Civil Procedure 401.  That Rule states:

**(a)** Original process shall be served within the Commonwealth within 30 days after the issuance of the writ or the filing of the complaint.

**(b)**(1) If service within the Commonwealth is not made within the time prescribed by subdivision (a) of this rule or outside the Commonwealth within the time prescribed by Rule 404, the prothonotary upon *praecipe* and upon presentation of the original process, or a copy thereof, shall continue its validity by designating the writ as reissued or the complaint as reinstated.

(2) A writ may be reissued or a complaint reinstated at any time and any number of times.  A new party defendant may be named in a reissued writ or a reinstated complaint only if the writ or complaint has not been served on any defendant.

(3) A substituted writ may be issued or a substituted complaint filed upon *praecipe* stating that the former writ or complaint has been lost or destroyed.

(4) A reissued, reinstated, or substituted writ or complaint shall be served within the applicable time prescribed by subdivision (a) of this rule or by Rule 404 after reissuance, reinstatement, or substitution.

(5) If an action is commenced by writ of summons and a complaint is thereafter filed, the plaintiff, instead of reissuing the writ, may treat the complaint as alternative original process and as the equivalent for all purposes of a reissued writ, reissued as of the date of the filing of the complaint.  Thereafter the writ may be reissued, or the complaint may be reinstated as the equivalent of a reissuance of the writ, and the plaintiff may use either the reissued writ or the reinstated complaint as alternative original process.[1]

This Court has recognized a potential problem with the Rule: a plaintiff could file a writ or complaint and thereby toll the statute of limitations, while delaying service upon the defendant indefinitely by continually reissuing the writ or reinstating the complaint. After all, these actions may be taken "any number of times."[2]  In fact, this Court described Rule 401's predecessor as "inadequately worded," and opined that "its language must be construed by reasonable interpretation."[3]

To address this challenge, the Court created what became known as the "equivalent rule."  Pursuant to that rule, "a writ of summons may be reissued only for a period of time which, measured from the date of original issuance of the writ, or the date

---

[1]     Pa.R.Civ.P. 401 (notes omitted).

[2]     Pa.R.Civ.P. 401(b)(2).

[3]     *Zarlinsky v. Laudenslager,* 167 A.2d 317, 320 (Pa. 1961).

of a subsequent reissuance thereof, is not longer than the period of time required by the applicable statute of limitations for the bringing of the action."[4]  The Court cautioned that the Rule was "not meant to create rights *Ad infinitum* [*sic*] in anyone."[5]

The Court revisited the issue in *Lamp v. Heyman*.[6]  In a 4-3 decision, this Court addressed the potential for abuse in permitting the plaintiff to control the time of service. In that case, Lamp was injured when Heyman struck her car.  Within the two-year statute of limitations, Lamp filed a *praecipe* for a writ of summons, but the writ was not delivered to the sheriff for service.  The writ was reissued twice, and the statute of limitations expired before service was effectuated.  Lamp admitted that she instructed the prothonotary to "issue and hold" the writ.[7]  Heyman filed preliminary objections, arguing that the action had not been commenced within the statute of limitations.  The trial court sustained those preliminary objections on the basis that the "issue and hold" instruction nullified the commencement of the action.  The Superior Court affirmed.

Following review, this Court "note[d] that it has become a relatively common practice throughout the Commonwealth for attorneys to file a *praecipe* with the prothonotary to toll the statute of limitations but then . . . to delay or prevent service upon the defendant."[8]  But, concluding that nothing in the Rule or the case law prevented this type of "issue and hold" instruction, the *Lamp* Court reversed.[9]  Nonetheless, the Court recognized that "there is too much potential for abuse in a rule which permits a plaintiff to

---

[4]    *Id.*

[5]    *Peterson v. Phila. Suburban Transp. Co.*, 255 A.2d 577, 582 (Pa. 1969).

[6]    366 A.2d 882 (Pa. 1976).

[7]    *Id.* at 885.

[8]    *Id.* at 886.

[9]    *Id.*

keep an action alive without proper notice to a defendant merely by filing a *praecipe* for a writ of summons and then having the writ reissued in a timely fashion without attempting to effectuate service."[10]  Accordingly, the Court declared that, prospectively, "a writ of summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion."[11]

Ten years later, in another 4-3 decision, the Court revisited *Lamp*.  In *Farinacci v. Beaver County Industrial Development Authority*,[12] a writ was filed on February 2, 1982, the last day before the statute of limitations ran.  Although the writ issued, counsel misplaced the file before delivering the writ to the sheriff for service.  Counsel found the file several days later, but again forgot to provide the writ for service.  Finally, the writ was reissued on March 11 and delivered to the sheriff for service.  The sheriff effectuated personal service within two weeks.

The *Farinacci* Court interpreted *Lamp* as having "changed the prior practice of automatically tolling the statute of limitations after *praecipe* for writ of summons for the same period of time within which the original action could be brought, by imposing the additional requirement that plaintiffs '[refrain] from a course of conduct'" intended to delay the action.[13]  The Court further gleaned from *Lamp* a requirement that plaintiffs make "a good-faith effort to effectuate notice of commencement of the action."[14]  As such, the *Farinacci* Court announced that, "where noncompliance with *Lamp* is alleged, the court

---

[10]     *Id.* at 888.

[11]     *Id.* at 889.

[12]     511 A.2d 757 (Pa. 1986).

[13]     *Id.* at 759 (quoting *Lamp*, 366 A.2d at 889).

[14]     *Id.*

must determine in its sound discretion whether a good-faith effort to effectuate notice was made."[15] The Court affirmed the dismissal of the plaintiffs' complaint because the plaintiffs had not offered an explanation for the delay in service consistent with a good-faith effort.

*Witherspoon v. City of Philadelphia* was this Court's next attempt to clarify *Lamp*'s requirements, although consensus proved elusive.[16] Witherspoon had filed a writ of summons shortly before the statute of limitations ran. The writ was delivered to a process server who attempted timely service, but was unsuccessful. The process server did not re-attempt service, nor did he timely file a return of no service. About nine months later, Witherspoon filed a complaint, which was correctly served. The trial court found that the one unsuccessful attempt did not constitute a good-faith effort at service, and it sustained preliminary objections to the complaint.[17]

The Opinion Announcing the Judgment of the Court ("OAJC") in *Witherspoon* determined that the facts were similar to those in *Farinacci*. In both cases, the plaintiff inadvertently failed to effectuate service. In *Farinacci*, this was due to the counsel's loss of the file and counsel's forgetfulness. In *Witherspoon*, the omission was due to the failure of the process server to make additional attempts and to timely file the correct paperwork. The OAJC concluded that the one timely attempt at service in *Witherspoon* (which *Farinacci* lacked) did not compel a finding of good faith, and so it affirmed the lower court.

---

[15]     *Id.*

[16]     768 A.2d 1079 (Pa. 2001). The Opinion Announcing the Judgment of the Court was authored by Justice Zappala and joined by Chief Justice Flaherty. Justice Saylor authored a concurring opinion which Justices Castille and Nigro joined. The Concurrence agreed with the result but not the rationale of the Opinion Announcing the Judgment of the Court. Justice Newman wrote a Dissent, which was joined by Justice Cappy.

[17]     *Id.* at 1080-81.

The *Witherspoon* OAJC also questioned the necessity for the "equivalent rule" in light of the result that the *Lamp* Court had reached. The OAJC also observed that, without valid service, a court does not obtain personal jurisdiction over a defendant. "Given the importance of service. . .," the OAJC deemed "it necessary that where [the] progression 'straddles the line' of the limitation period the process must be served within the time allowed by the Rules of Civil Procedure or, if service cannot be made, the process must be immediately and continually reissued until service is made."[18]

While the concurring Justices agreed with the dismissal of the complaint based upon the nine-month delay in service, they did not agree with the OAJC's proposed "immediately and continually reissued" rule. Instead of the OAJC's "new and fairly rigorous paradigm," the Concurrence suggested the possibility of "rule-based mechanisms in order to encourage diligent prosecution of complaints."[19] The Concurrence recommended referring the issue to the Civil Procedural Rules Committee.

The Dissent disagreed with jettisoning the "equivalent rule." The dissenting Justices asserted that the statute of limitations only requires an action to be commenced within the relevant period and, further, that commencement means filing. Per the relevant statutes, the Dissent reasoned that service was not required in order to toll the statute of limitations. The "equivalent rule" was developed to curb the potential abuse of tolling the statute by filing a writ, while never serving it upon the defendant. The Dissent objected to the OAJC's proposed "immediately and continually reissued" rule as likely to lead to

---

[18]     *Id.* at 1084 (footnote omitted).

[19]     *Id.* at 1084-85 (Saylor, J., concurring)(citing Fed.R.C.P. 4(m), which at the time provided for dismissal without prejudice if service is not made within 120 days of filing, but provided for an extension of time upon good cause shown).

additional litigation over "the scope of plaintiff's efforts to locate and serve a defendant after an unsuccessful, but good faith, attempt to serve the originally-issued process."[20]

A few years later, this Court tackled the good-faith effort issue in *McCreesh v. City of Philadelphia*.[21] McCreesh filed a writ shortly before the statute of limitations would have run. He attempted to serve the writ on the defendant City by certified mail. There was no question that the writ was received by the City within thirty days of its issuance and within the statute of limitations. Three months later, McCreesh reissued the writ, filed his complaint, and correctly served both. The City filed preliminary objections based upon the failure to serve the writ properly. The trial court overruled the objections, but the Commonwealth Court reversed, concluding that the service by certified mail did not comply with the Rules and was not a good-faith effort at service.

In a 4-3 opinion, this Court recounted the *Lamp-Farinacci-Witherspoon* history. The Court noted that *Lamp* "qualified" *Zarlinsky* by adding that a writ can remain effective provided the plaintiff has no intent to stall.[22] *Farinacci* "subtly altered" *Lamp*'s holding by introducing "a good-faith effort to effectuate notice" requirement.[23] Finally, a majority of Justices in *Witherspoon* rejected the OAJC's proposed "restrictive" "immediately and continually reissued" rule.[24]

The *McCreesh* Court noted that the intermediate appellate courts "have struggled to apply the *Lamp-Farinacci* rule."[25] Some appellate panels had adopted an approach

---

[20]     *Id.* at 1088 (Newman, J., dissenting).

[21]     888 A.2d 664 (Pa. 2005).

[22]     *Id.* at 672.

[23]     *Id.*

[24]     *Id.* at 673.

[25]     *Id.* at 666.

that required strict compliance, while others applied "a more flexible approach, excusing plaintiffs' initial procedurally defective service where the defendant has actual notice of the commencement of litigation and is not otherwise prejudiced."[26]  The Court concluded "that the rigid compliance requirement . . . is incompatible with the plain language of Rule 401, the spirit of *Lamp,* and the admonition of Rule 126 to construe liberally the rules of procedure."[27]  The Court stated that, when actual notice has been provided to the defendant, the plaintiff should not be punished for technical missteps.  Further, courts should "dismiss only those claims where plaintiffs have demonstrated an intent to stall the judicial machinery or where plaintiffs' failure to comply with the Rules of Civil Procedure has prejudiced defendant."[28]  Relying upon the fact that the City had actual notice through the certified mailing of the writ, the Court reversed, with directions for the trial court to review whether there had been any prejudice to the City.

We took up this issue again in *Gussom v. Teagle*.[29]  That case involved a motor vehicle accident.  Gussom filed her complaint within the statute of limitations, but was unable to serve Teagle, who had moved out of state.  After the statute of limitations ran, counsel entered an appearance for Teagle, and Gussom then filed to reinstate her complaint.  Teagle filed preliminary objections, seeking to dismiss the complaint based upon lack of service.  Gussom did not respond to the preliminary objections, but, instead, filed again to reinstate the complaint.  The trial court granted the preliminary objections and denied Gussom's petition for reconsideration.  In that petition, Gussom stated that

---

[26]     *Id.*

[27]     *Id.* at 674.

[28]     *Id.*

[29]     247 A.3d 1046 (Pa. 2021).

the complaint had been sent to Teagle's new Virginia address by certified mail, but had not been claimed. She asserted that she made good-faith efforts at service.

In another 4-3 decision, a Majority of this Court gleaned from the relevant cases the requirement that plaintiffs "act diligently to meet their good-faith requirement to effectuate service."[30] Additionally, only cases in which "plaintiffs have demonstrated an intent to stall the judicial machinery or where plaintiffs' failure to comply with the Rules of Civil Procedure has prejudiced defendant" will result in dismissal.[31] Finally, the Court recognized that *McCreesh* permitted actual notice to satisfy the good-faith service requirement even if a plaintiff had not strictly complied with the rules. Because the record indicated that Gussom had only filed an affidavit of non-service before the statute of limitations ran and that nothing else had occurred for almost four months until Gussom filed the *praecipe* for reinstatement of the complaint, the Court concluded that Gussom had not carried her burden to demonstrate her good-faith efforts at service.[32]

Three years on, we now return to this subject. In reviewing the above-summarized case law, the Majority notes this Court's difficulty in articulating guidance for determining whether a case should be dismissed for failure to comply with service requirements.[33] The Majority relies upon a change in terminology (notice versus service of process) between *McCreesh* and *Gussom*. Based upon that change, the Majority concludes that

---

[30]     *Id.* at 1056.

[31]     *Id.* (quoting *McCreesh,* 888 A.2d at 674).

[32]     I dissented in *Gussom,* and was joined by Justice Donohue and Justice Mundy. *Id.* at 1058-61 (Wecht, J. dissenting). There, I determined that "*McCreesh* was a significant departure from *Farinacci* and *Witherspoon*" and that the correct inquiry required examination of the plaintiff's intent to stall and the defendant's prejudice. *Id.* at 1060. Answering that question, I concluded that there was no evidence of an intent to delay and that there was no prejudice to Teagle. I would have reversed the Superior Court and let Gussom's case proceed.

[33]     Maj. Op. at 31-33.

the relevant inquiry is whether "the good faith effort is to diligently and timely serve process on the defendant."[34]  Based upon that construction, the Majority concludes that Beverly Ferraro's one attempt to have the sheriff serve her complaint without follow-up was insufficient to constitute a good-faith effort.  The Majority discounts the actual notice to Burger King because Ferraro used a process server to deliver the complaint.  Because process servers are not permitted to effectuate service in these circumstances, the Majority concludes that this was not a technical misstep inasmuch as "there was never an intent to comply with the Rules."[35]  "Our allowance of a deviation from strict compliance with our service rules when notice is imparted to the defendant," the Majority explains, "is tied to a good faith effort to comply with the Rules."[36]  Because Ferraro did not attempt to comply with the Rules when she used a process server, the Majority concludes that the notice provided to Burger King is irrelevant.

A review of the case law shows that this Court started with a Rule beset by deficiencies.  To address those problems, the *Lamp* Court layered atop the Rule a requirement that a plaintiff not intend to stall the legal machinery.  The *Farinacci* Court added another layer by creating a good-faith requirement.  The Court introduced yet another consideration in *McCreesh*: that actual notice could constitute compliance even if there were technical missteps, provided that the defendant was not prejudiced.  Today's Majority adds yet another inquiry: whether there was an intent to comply with the Rules.  Despite this Court's repeated and sincere attempts to clarify and refine the standard for excusing a failure to comply strictly with the service requirements, I am skeptical that the

---

[34]     *Id.* at 34 (emphasis omitted); *see also id.* at 28 (contrasting *McCreesh*, which said "good faith effort to effectuate notice," with *Gussom*, which said "good faith effort to effectuate service of process" (emphasis omitted)).

[35]     *Id.* at 37.

[36]     *Id.*

Court has succeeded in providing the intended clarity, or in enabling lower courts or litigants to predict how any individual case will be decided.

To some extent, that may be unavoidable. As the precedents demonstrate, the factual circumstances under which service is attempted are as varied as the litigants bringing the cases. This area of law may not be amenable to a bright-line rule. As noted in today's Majority and in prior cases, that may be due partly to the inherent contradiction at the heart of the cases.[37] As the *Witherspoon* OAJC noted, completed service provides the court with personal jurisdiction over the defendant. To that end, we have said that "[t]he rules relating to service of process must be strictly followed, and jurisdiction of the court over the person of the defendant is dependent upon proper service having been made."[38] Absent proper service, the court lacks personal jurisdiction and cannot enter a judgment in the case.[39] That rigidity stands in marked contrast to the Court's invocation of liberality and flexibility in service rules. This tension, exhibited most clearly in the various opinions in *Witherspoon*, highlights the difficulty in providing clear expectations surrounding service.

Is there any better way to peel this onion?

One option is to mandate strict compliance with the Rules. That has the advantage of providing structure and certainty for litigants and courts. However, in both *Witherspoon* and *McCreesh*, we have rejected that option as inconsistent with Rule 126 and "the spirit of *Lamp*." And, while this approach would provide certainty, it leaves in place the problem that *Lamp* discussed: the prospect that the plaintiff might retain control of the litigation

---

[37]   *See* Maj. Op. at 17 (recognizing the "dual purpose" of service of process to provide notice to the defendant and to confer personal jurisdiction).

[38]   *Sharp v. Valley Forge Med. Ctr. & Heart Hosp., Inc.*, 221 A.2d 185, 187 (Pa. 1966).

[39]   *Cintas Corp. v. Lee's Cleaning Servs., Inc.*, 700 A.2d 915, 917-18 (Pa. 1997).

well beyond the statute of limitations by reissuing the writ or reinstating the complaint without serving the defendant.

Another option is to amend the Rule. Justice Saylor's concurrence in *Witherspoon* suggested revising the Rule in order to clarify the requirements for plaintiffs. To date, no substantive amendments have been made.[40] Perhaps it is time to review the Rule. I echo Justice Saylor's call for the Civil Procedural Rules Committee to examine the Rule.

Absent strict compliance or a Rule amendment, I propose another suggestion in this Court's ongoing attempts to provide clarity. The Court has been adding to and adjusting a global inquiry that considers the plaintiff's good faith, intent to delay, prejudice to the defendant, and actual notice. This has thrown all these elements into the mix without much guidance on which one will be the deciding factor in any given case. Instead, the courts could engage in a step-by-step inquiry into three distinct questions: (1) whether the plaintiff has been diligent; (2) whether the plaintiff has acted in good faith; and (3) whether the defendant was prejudiced.[41]

Diligence can be measured by the actions that the plaintiff took to provide notice and to effectuate service. In evaluating the plaintiff's actions, the law should recognize that hindsight affords more clarity than is available in the moment. Because there is always something more that a plaintiff could have done, the court should look to whether the plaintiff took reasonable measures based upon the circumstances of the case. Because the motivating factor in this line of precedent is to ensure that the defendant

---

[40] Amendments in 2019 made minor changes to the Rule. The *McCreesh* Court noted that the substance of the Rule — that the writ or complaint can be reissued at any time and any number of times — has remained the same since the prior rule (Rule 1010) was in effect. *McCreesh*, 888 A.2d at 671 n.16.

[41] I recognize that my proposed test varies somewhat from the position I took in my *Gussom* dissent. However, I recognize that a majority of this Court had voted to maintain consideration of a plaintiff's good faith and incorporate that here.

received notice of the suit and to prevent the plaintiff from extending the statute of limitations without providing that notice, actual notice of the writ or complaint should suffice.

I differ from the Majority insofar as I would find actual notice regardless of whether it was provided through a misguided attempt at service, like the certified mail delivery in *McCreesh*, or through a known misstep, such as the use of a process server here. Either one provides the defendant with actual notice and serves the interest that the *Lamp* line of cases sought to protect.

However, actual notice does not address the other purpose of service of process: the establishment of personal jurisdiction. A court does not obtain personal jurisdiction until the defendant is correctly served. As the Majority notes, "service of original process pursuant to the Rules of Civil Procedure is required to confer the jurisdiction of the court over a defendant."[42] Thus, when initial notice is improper, the Rule eventually must be satisfied to establish jurisdiction. This ensures that plaintiffs cannot "opt out of the Rules."[43] In all of these cases, except *Gussom*,[44] the defendant eventually was served correctly, and this provided the court with personal jurisdiction.

---

[42]     Maj. Op. at 32.

[43]     *Id.* at 38; s*ee also Witherspoon*, 768 A.2d at 108-89 (Newman, J., dissenting) ("Of course, since service of process is necessary to establish personal jurisdiction over a defendant, and because there can be no enforceable judgment from a court that lacks jurisdiction, it will always be in the plaintiff's interests to serve the defendant." (footnote omitted)).

[44]     In *Gussom*, the plaintiff asserted that the defendant had been served when the complaint was left with his father. Appellant's Br. at 7-8, *Gussom v. Teagle*, 247 A.3d 1046 (Pa. 2021) (12 EAP 2020). The defendant maintained that service was not effectuated because the address at which the complaint was left was not his. Appellee's Br. at 3, *Gussom v. Teagle*, 247 AA.3d 1046 (Pa. 2021) (12 EAP 2020). Given the disposition of the case, this issue was not resolved conclusively.

The second inquiry would focus upon the plaintiff's good faith. This would entail determination of whether the plaintiff acted in any way to stall the legal machinery. Here, indicia of an intent to delay would be relevant. Additionally, the length of time between a plaintiff's actions, such as the nine-month delay in *Witherspoon*, could be circumstantial evidence of an intent to delay. A good example of lack of good faith is the situation in *Lamp*, in which the plaintiff's counsel issued a hold order after filing for the writ.

Even if a plaintiff demonstrates diligence and good faith, the defendant would have the opportunity to show that it had been prejudiced by the delay. The court would have to consider any prejudice, and its effects, before deciding whether the plaintiff's case should be dismissed.

Applying this three-pronged test here, I would affirm. I conclude that Ferraro was diligent. Ferraro attempted service via the sheriff, which service failed for unknown reasons. She then provided actual notice prior to the expiration of the statute of limitations, albeit in a noncompliant manner. Ferraro effectuated proper service six months later, which provided the court with personal jurisdiction. While Ferraro could have acted with more urgency, as noted above, hindsight always confers a misleading clarity, and there is always more that could have been done. That does not preclude a finding of diligence.

Further, I would conclude that Ferraro acted in good faith. The trial court found that there was no evidence of an intent to stall or delay. Additionally, Burger King provided no evidence that it was prejudiced in any way.[45] Moreover, Burger King received actual notice of the complaint before the statute of limitations ran.

---

[45]    *See* Trial Ct. Op., 12/28/2021, at 9 (finding that "any delay . . . was not an attempt to stall the judicial machinery" and that Burger King "failed to demonstrate any prejudice").

Given these conclusions, I would affirm the lower courts' decisions to permit Ferraro's case to proceed.  Therefore, I respectfully dissent.

Justice Mundy joins this dissenting opinion.