[J-74-2020] [MO: Baer, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| RHASHEENA GUSSOM, | : | No. 12 EAP 2020 |
| | : | |
| Appellant | : | Appeal from the Judgment of |
| | : | Superior Court entered on 9/26/2019 |
| | : | at No. 3245 EDA 2018 affirming the |
| v. | : | Order entered on 10/3/2018 in the |
| | : | Court of Common Pleas, |
| | : | Philadelphia County, Civil Division, |
| MAURICE TEAGLE, | : | at No. 3821 April Term, 2018. |
| | : | |
| Appellee | : | ARGUED: September 16, 2020 |

## DISSENTING OPINION

**JUSTICE WECHT** **DECIDED: March 25, 2021**

I respectfully dissent. The Majority affirms the dismissal of Rhasheena Gussom's negligence complaint against Maurice Teagle stemming from a July 25, 2016 motor vehicle accident. In doing so, the Court endeavors to clarify the rule of *Lamp* and *McCreesh*,[1] which permits a plaintiff to toll the statute of limitations in a civil action where she is unable to effectuate service of original process within the time period provided by the Pennsylvania Rules of Civil Procedure. The Majority holds that "a trial court has the discretion to dismiss a complaint when a plaintiff fails to offer proof that she diligently attempted to serve process on a defendant in a timely manner and there is no evidence to indicate that the defendant had actual notice of the action in the relevant time frame, regardless of whether the plaintiff acted or failed to act intentionally." Maj. Op. at 3. I read *Lamp* and its progeny as requiring affirmative proof of either plaintiff's intent to stall

---

[1] *Lamp v. Heyman*, 366 A.2d 882 (Pa. 1976); *McCreesh v. City of Phila.*, 888 A.2d 664 (Pa. 2005).

the judicial machinery or actual prejudice to the defendant before a civil action may be dismissed in these circumstances. Both of these proofs are lacking here. Even under the Majority's formulation, however, I would find Teagle's appellate counsel's admission that trial counsel received notice of the complaint through the defendant's insurance carrier, prompting his entry of appearance in this matter within three weeks of the July 25, 2018 statute of limitations, to be sufficient to satisfy *McCreesh*'s demand of proof of "actual service."

As the Majority aptly observes, prior to 1976, Pennsylvania courts witnessed repeated abuses of the Rules of Civil Procedure. Plaintiffs routinely would attempt to toll the statute of limitations by filing a writ of summons, having the writ repeatedly reissued as a matter of course, and then deliberately failing to notify defendants of pending litigation. Maj. Op. at 2 (citing *McCreesh*, 888 A.2d at 665). In announcing the *Lamp* rule, we declared that its "purpose" was to "avoid the situation in which a plaintiff can bring an action, but, by not making a good-faith effort to notify a defendant, retain exclusive control over it for a period in excess of that permitted by the statute of limitations." *Lamp*, 366 A.2d at 889. Accordingly, pursuant to our supervisory power over Pennsylvania courts, we declared that an action commencing suit "shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion." *Id.*

A decade later, in *Farinacci v. Beaver County Industrial Development Authority*, 511 A.2d 757 (Pa. 1986), we indicated that "*Lamp* requires of plaintiffs a good-faith effort to effectuate notice of commencement of the action," which was to be determined by a court "in its sound discretion." *Id.* at 759. At issue in *Farinacci* was a praecipe for a writ of summons filed on the last permissible day under a two-year statute of limitations for personal injury actions. When the prothonotary issued the writ the next day, plaintiffs'

"counsel intended to immediately instruct and pay the sheriff for service," but "he misplaced the file." *Id.* at 758. Although counsel ultimately discovered the file just over a week later, he then "forgot to take necessary steps to effectuate service of the writ," which had to be reissued more than five weeks after it initially was issued. We suggested in *dicta* that the "eight or nine days of the delay [that] was attributable to counsel's simply misplacing the file" was "not necessarily inconsistent with a finding of good faith." *Id.* at 760. However, we affirmed the trial court's dismissal of plaintiffs' action because they "failed to provide an explanation for" the remaining four weeks of delay—which plaintiffs attributed "only to counsel's faulty memory"—thereby depriving the trial court of evidence by which to "substantiate a finding that plaintiffs made a good-faith effort to effectuate service." *Id.*

Subsequently, in *Witherspoon v. City of Philadelphia*, 768 A.2d 1079 (Pa. 2001) (plurality), a plurality of the Court cited *Farinacci* for the proposition that there is "no distinction between an intentional withholding of service and a lack of service due to counsel's inadvertence" when determining whether the "condition subsequent" of "service, or at least a good faith attempt at service," had been fulfilled. *Id.* at 1083; *see id.* ("*Lamp* and *Farinacci* establish that any failure regarding follow-up activity that is attributable to the plaintiff or his agents, rather than public officials, falls outside th[e] purpose" of the rule.). *Witherspoon* concerned a nine-month delay in service attributable to the process server, who declined to make additional attempts at service after the first attempt was unsuccessful and also failed to make and file a return of no service as required by Pa.R.C.P. 405(a) and (e). Additionally, plaintiff's counsel failed "to promptly ascertain the results of the process server's efforts." *Id.* at 1083. The plurality concluded that "any failure regarding follow-up [service] activity that is attributable to the plaintiff or his agents, rather than public officials, falls outside" the purpose of the rule announced in

*Lamp*, as refined by *Farinacci*. *Id.* Because Witherspoon's counsel opted to use a private firm to make service rather than the sheriff, Witherspoon was "bound by the actions of [his] agents (counsel and the process server)," and their failure to effectuate service for the better part of a year was fatal to the civil action. *Id.*[2]

Returning to the issue most recently in *McCreesh*, we cautioned against "punishing a plaintiff for technical missteps where he has satisfied the purpose of the statute of limitations by supplying a defendant with actual notice." 888 A.2d at 674. *McCreesh* thus "embrace[d] the logic" of the Superior Court's decision in *Leidich v. Franklin*, 575 A.2d 914 (Pa. Super. 1990), "which, applying *Lamp*, would dismiss only those claims where plaintiffs have demonstrated an intent to stall the judicial machinery or where plaintiff's failure to comply with the Rules of Civil Procedure has prejudiced defendant." *McCreesh*, 888 A.2d at 674; *see Leidich*, 575 A.2d at 918 (gleaning from *Lamp* and its progeny that: "(1) one's 'good faith' effort to notify a defendant of the institution of a lawsuit is to be assessed on a case-by-case basis; and (2) the thrust of all inquiry is one of whether a plaintiff engaged in a 'course of conduct' forestalling the legal machinery put in motion by his/her filings"). In a footnote, we indicated "that there may be situations where actual notice may not be absolutely necessary so long as prejudice did not result," but declined to "delineate such an exception" because the issue was not before us. *McCreesh*, 888 A.2d at 674 n.20.

*McCreesh* was a significant departure from *Farinacci* and *Witherspoon*. Whereas *Farinacci* suggested that plaintiffs carry an evidentiary burden to establish their good-faith efforts to ensure that notice was served on defendants—which *McCreesh* made clear can

---

[2] Concurring in the result, three justices, in an opinion authored by then-Justice Saylor, agreed with the two dissenting justices that the plurality's "approach that 'the process must be immediately and continually reissued until service is made' in order to toll the applicable period of limitations" should be rejected as "unduly restrictive." *Witherspoon*, 768 A.2d at 1084 (Saylor, J., concurring).

be satisfied through proof of actual notice, however informal or technically deficient—unlike the Majority, I read *McCreesh* as unmistakably shifting the burden to defendants to affirmatively demonstrate either plaintiffs' intent to stall the judicial process or prejudice resulting from their failure to comply with the Rules of Civil Procedure in order to secure dismissal of a civil action. As such, plaintiffs' inadvertent mistakes are no longer sufficient to warrant dismissal. Rather, *McCreesh* counsels a reversion to the threshold inquiry first posited in *Lamp*: namely, has the plaintiff "refrain[ed] from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion"? *Lamp*, 366 A.2d at 889.

Properly analyzed under this standard, *Farinacci* may have been wrongly decided given the absence of any intent to stall over the five weeks between filing the praecipe for the writ of summons and its eventual service upon the defendant. The same is true here, where there is no evidence that Gussom intended to delay service of process, nor any indication of prejudice to Teagle. To the contrary, the record shows that Gussom made at least four attempts at service (three times in Philadelphia and once in Waynesboro, Virginia) in her seemingly futile, interstate effort to track down Teagle, which began nearly three months before the statute of limitations expired on July 24, 2018. This stands in stark contrast to the plaintiffs in *Farinacci* and *Witherspoon*, who waited until the last possible day to initiate their action and made just one attempt at service in nine months, respectively.

But even under the Majority's formulation, Gussom likely satisfied her burden in this case, notwithstanding her inexplicable failure to respond to Teagle's preliminary objections, which should not be condoned. Specifically, at argument, when asked if Teagle's trial counsel had entered his appearance in the case on August 13, 2018, upon receiving notice of Gussom's complaint from Teagle's insurance carrier, Teagle's

appellate counsel initially deflected. However, he then acknowledged that trial counsel had in fact entered his appearance because Gussom's counsel advised Teagle's insurance company of the litigation.[3] This admission is supported by evidence of record, namely, Teagle's September 9, 2018 preliminary objections, which included Gussom's complaint as an attached exhibit. The trial court's docket thus provided a basis for the court to inquire as to Teagle's actual notice of the complaint within weeks of the statute of limitation's expiration, if not sooner depending on when the insurance carrier notified defense counsel.

It would strain credulity to suggest that Teagle's counsel entered his appearance and filed these objections without first consulting his client regarding his receipt of Gussom's complaint, regardless of its source. While sending a complaint to an insurance carrier generally is insufficient to effectuate service under our Rules of Civil Procedure, *see Cahill v. Schults*, 643 A.2d 121, 125 (Pa. Super. 1994); *Schriver v. Mazziotti*, 638 A.2d 224, 227 (Pa. Super. 1994), *Ferrera v. Hoover*, 636 A.2d 1151, 1153 (Pa. Super. 1994), I see no good reason why it should not suffice to establish a plaintiff's good-faith effort to serve a defendant if it results in actual notice to the defendant of the pending litigation. Accordingly, because actual service appears to have been made here, and there exists no evidence of intent to stall or prejudice to Teagle, I would reverse the order of the Superior Court and reinstate Gussom's complaint.

Justice Donohue and Justice Mundy join this dissenting opinion.

---

[3] *See* Oral Argument, Morning Sess., 9/16/2020, at 26:22-27:05 (Counsel for Appellee: "[M]y understanding is that when counsel filed their entry of appearance on August 13, which was beyond the statute of limitations, it was based on Appellant['s] counsel advising the insurance company for the defendant of the lawsuit. And at that point counsel entered their appearance, which isn't, as you know, a waiver of service, but to simply make sure that they got notices of future docket events.") (available at https://www.youtube.com/watch?v=ve0HIMz6Wb8).