**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| BEVERLY FERRARO, | : | No. 1 WAP 2023 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered May 27, |
| | : | 2022 at No. 1291 WDA 2021, |
| v. | : | Affirming the Order of the Court of |
| | : | Common Pleas of Butler County |
| | : | entered July 23, 2021 at No. 2020- |
| PATTERSON-ERIE CORPORATION D/B/A | : | 10245 |
| BURGER KING AND BURGER KING | : | |
| CORPORATION, | : | ARGUED:  October 17, 2023 |
| | : | |
| Appellant | : | |

**OPINION**

**JUSTICE DONOHUE**                                    **DECIDED: APRIL 25, 2024**

The question presented in this appeal is whether the plaintiff met the good faith standard of diligent attempt at timely service of process on the defendant so that dismissal of her complaint was not warranted.

The plaintiff, Beverly Ferraro, slipped and fell in a Butler County Burger King on August 26, 2018.  She originally filed a complaint against the defendant, Patterson-Erie Corporation D/B/A Burger King and Burger King Corporation ("Burger King") on March 4, 2020,[1] within the two-year statute of limitations for negligence actions established in 42

---

[1]  There is dispute regarding the identification of the defendants, who assert that there is no entity named Patterson Erie Corporation d/b/a/ Burger King in operation at the identified address, and that they are PEC Management, II, LLC.  Answer and New Matter, 12/14/2020, ¶ 3.  Because that dispute does not impact the resolution of the present appeal, we refer to defendants as "Burger King" for ease of discussion.

Pa.C.S. § 5524. Ferraro forwarded instructions and payment to the Sheriff to serve the complaint, but service was not effectuated. After the complaint lapsed and without its reinstatement, Ferraro arranged for a private process server to deliver the lapsed complaint to Burger King, which was accomplished. Eight months after the original filing of the complaint, and approximately two-and-a-half months after the two-year statute of limitations would have elapsed absent filing the original complaint, Ferraro reinstated the complaint and effectuated service of the complaint upon Burger King through the Sheriff. Burger King filed an answer, asserting as new matter that the action was barred by the statute of limitations. Burger King reasserted the issue in a motion for judgment on the pleadings, which the trial court denied. In an interlocutory appeal, the Superior Court affirmed. This Court granted review of the following question:

> Whether the Superior Court's conclusion that [Ferraro] was excused from compliance with the Rules of Civil Procedure to serve [Burger King] timely and via the Sheriff before the statute of limitations expired was in conflict with this Honorable Court's holdings on the same legal question and other holdings of the intermediate appellate courts?

*Ferraro v. Patterson-Erie Corp.*, 290 A.3d 645 (Pa. Jan. 4, 2023) (per curiam). For the reasons explained in this opinion, we reverse the order of the Superior Court.

**Factual and procedural history**

The pleadings, the docket, and the briefs and arguments of the parties establish that the following facts are not in dispute.[2] On March 4, 2020, Ferraro filed a complaint

---

[2] This case is infected with multiple procedural irregularities. First, Burger King challenged the efficacy of Ferraro's service of process by way of new matter raising the statute of limitations. In *McCreesh v. City of Philadelphia*, 888 A.2d 664 (Pa. 2005), we made clear that a challenge arising under the rule articulated in *Lamp v. Heyman*, 366 A.2d 882 (Pa. 1976), and its progeny is a challenge to service of process and not a challenge based on the statute of limitations. *McCreesh*, 888 A.2d at 668 n.10. Pennsylvania Rule of Civil Procedure 1028 requires challenges to service of process to be made by filing preliminary objections endorsed with a notice to plead and to be decided (continued…)

in civil action ("Complaint") in the Court of Common Pleas of Butler County, raising one count of negligence against Burger King for a slip and fall she suffered on its premises on August 26, 2018. Complaint, 3/4/2020, ¶¶ 2, 8, 10. The case was assigned to the Honorable S. Michael Yaeger. Order, 3/5/2020, at 1.

On March 9, 2020, Ferraro mailed the Sheriff of Butler County a cover letter, a certified copy of the Complaint, and a check to pay for service. Trial Court Opinion, 12/28/2021, at 2 (citing Ferraro's response in opposition to judgment on the pleadings, 3/9/2021, ¶ 3 (hereinafter "Response")). There is nothing on the docket reflecting any action by the Sheriff to effectuate service. The COVID-19 pandemic was officially recognized as a public health emergency by the Governor on March 6, 2020, and on March 18, 2020, this Court entered a comprehensive order establishing protocols during the emergency. Governor Wolf, "Proclamation of Disaster Emergency," (Mar. 6, 2020), Commonwealth of Pennsylvania Office of the Governor, https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf ("Governor's Proclamation"); Order (Nos. 531 and 532 Judicial Administration Docket), 3/18/2020. Ferraro assumed that this explained the lack of service by the Sheriff of the Complaint. However, according to docket entries in other cases produced by Burger King, the Sheriff of Butler County served original process during this time period in other cases. Approximately two months after the unsuccessful attempt at service, in early May 2020, Ferraro employed a private process server, who hand-delivered a copy of the original Complaint to Burger King. *Id.* at 2 (citing Response,

on an evidentiary record. Pa.R.C.P. 1028(a)(1) and note. However, Ferraro did not file preliminary objections challenging the new matter raising the defect in service based on Burger King's failure to comply with rule of court pursuant to Pa.R.C.P. 1028(a)(1). Instead, the trial court allowed the parties to develop the facts underlying this dispute in the briefs and arguments filed as a result of Burger King's motion for judgment on the pleadings. Because Ferraro did not object to this procedure and the facts appear to be uncontested, we will decide the appeal based on those facts.

3/9/2021, Exh. 2 (Heaven Sent Legal Services notarized affidavit of service dated 5/8/2020)). Ferraro understood that this did not constitute service of process under the Rules of Civil Procedure. This action was taken to give notice of the lawsuit to Burger King. Ferraro did not take action to perfect service of the Complaint[3] until November 3, 2020, when Ferraro filed a praecipe to reinstate the Complaint and instructed the Sheriff's Office to make service. On November 30, 2020, the Sheriff formally served the Complaint upon Burger King. Affidavit of Service, 12/8/2020, at 1.

On December 14, 2020, counsel for Burger King entered an appearance and filed an answer to Ferraro's complaint. In new matter, Burger King asserted, inter alia, that it was not properly served until November 2020, and therefore, the claims are barred by the applicable two-year statute of limitations. Answer and New Matter, 12/14/2020, ¶¶ 20-22; *see also* Amended Answer and New Matter, 1/19/2021, ¶¶ 20-22. Ferraro filed a reply to the new matter, denying all allegations as legal conclusions to which no response is required and specifically denying factual allegations and demanding proof of them. Reply to new matter, 2/2/2021, ¶¶ 19-31. Thereafter, Burger King filed a motion for judgment on the pleadings premised on Ferraro's failure to make a good faith effort to timely serve the Complaint. Motion for Judgment on the Pleadings, 2/9/2021, ¶¶ 3, 14.

The trial court scheduled argument on the motion and set deadlines for pre-argument briefing. Order, 2/11/2021. Relying principally on *McCreesh v. City of Philadelphia*, 888 A.2d 664 (Pa. 2005), Ferraro maintained that she "made regular, extraordinary, and immediate attempts to serve the subject [C]omplaint." Brief, 6/7/2021,

---

[3] During this time, Ferraro was twice advised of the need to make technical modifications to the Complaint to comply with the practice of the Court of Common Pleas of Butler County. Return of Document, 5/27/2020, at 1, Return of Document, 6/3/2020, at 1. It is unclear how these technical deficiencies were corrected, but Burger King does not complain of them in this appeal.

at 3.[4] She asserted that Burger King received notice of the Complaint and was not prejudiced. *Id.* at 2 (asserting that Burger King was provided with notice by the private process server "to avoid arguments of prejudice" and to ensure it was aware of the action). For its part, Burger King contested whether Ferraro established under the facts that she made a good faith effort at service, and it sought dismissal based on the statute of limitations because Ferraro only attempted service of process through the Sheriff once prior to the expiration of the statute of limitations and did not again attempt service until more than two months after the statute of limitations expired. Reply in Support of Motion for Judgment on the Pleadings, 6/29/2021, at 1 (citing Pa.R.C.P. 400(a) (emphasis added)).[5]

At oral argument, Ferraro's counsel explained his rationale for using a private process server. He advised the court that he was not arguing that original process is not required, and he was "not attempting to supplant the Sheriff with a private process server." N.T. 7/9/2021, at 23. Instead, he characterized the private process server as a "supplement to ensure actual notice of the suit was received[.]" *Id.* at 23-24. According to Ferraro's counsel, the only possible evidence of good faith would be "sending the [C]omplaint with directions and a check for the services of the Sheriff to the Sheriff[,]" which he did, and which counsel established. *Id.* at 24. Following oral arguments the trial court denied Burger King's motion for judgment on the pleadings.[6] Burger King filed a petition for permission to appeal which the Superior Court granted, and the trial court stayed the proceedings during the pendency of the appeal. *Ferraro v. Patterson-Erie*

---

[4] Because the pages are unnumbered, page numbers are assigned starting with the first page of the pleading as page 1, excluding the cover page.

[5] Because the pages are unnumbered, page numbers are assigned starting with the first page of the pleading as page 1, excluding the cover page.

[6] Trial Court Order, 7/9/2021, at 2.

*Corp.*, 279 A.3d 1291 (Table), 2022 WL 1717935 at *1 (Pa. Super. May 27, 2022);[7] Trial Court Order, 7/23/2021. Burger King timely filed a Pennsylvania Rule of Civil Procedure Rule 1925(b) concise statement of matters complained of on appeal, raising as its single issue whether the trial court erred in concluding that Ferraro made a good faith effort to serve Burger King before the expiration of the statute of limitations, "when she disregarded the Rule[s] of Civil Procedure requiring the Sheriff to properly and timely serve her [C]omplaint, allegedly due in part to [COVID-19]?" Pa.R.A.P. 1925(b) Statement, 11/15/2021, ¶ 1.

In its Rule 1925(a) opinion, the trial court identified *Lamp v. Heyman*, 366 A.2d 882 (Pa. 1976), *Farinacci v. Beaver County Industrial Development Authority*, 511 A.2d 757 (Pa. 1986), *McCreesh v. City of Philadelphia*, 888 A.2d 664 (Pa. 2005), and *Gussom v. Teagle*, 247 A.3d 1046 (Pa. 2021) as the seminal and controlling cases[8] and found that Ferraro's conduct was similar to that of the plaintiff in *McCreesh*. Trial Court Opinion, 12/28/2021, at 3. It recounted that Ferraro properly forwarded the Complaint to the Sheriff for service, but service was "inexplicably not accomplished." According to the trial court, Ferraro hired a private process server "who accomplished service on [Burger King] the same day." *Id.* at 8. The court then observed that, like McCreesh, Ferraro utilized a method of service that "was not proper under the Pennsylvania Rules of Civil Procedure[.]" *Id.* The trial court emphasized that "this faulty attempt provided [Burger King] with actual notice of not only the commencement of the suit, but also the underlying

---

[7] Where a court issues an interlocutory order, it may indicate, where appropriate that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter[.]" 42 Pa.C.S. § 702(b). The law authorizes the appellate court to exercise its discretion to permit an appeal from such an order. *Id. see also*, Pa.R.A.P. 312. (Interlocutory Appeals by Permission).

[8] The cases relied on by the trial court are discussed in detail later in this opinion.

facts giving rise to the suit[.]" *Id*. Comparing further to *McCreesh*, the trial court cited Ferraro's conduct in reinstating her Complaint two months after expiration of the statute of limitations, and the fact that the Sheriff thereafter promptly accomplished service. *Id*. Again aligning the circumstances to those in *McCreesh*, the trial court observed that Ferraro "engaged in a good faith effort to properly serve [Burger King] with the [Complaint] within the applicable time period, provided actual notice to [Burger King] of the commencement of suit, and any delay in proper service or reinstatement of the Complaint was not an attempt to stall the judicial machinery." *Id*. at 9.

In response to Ferraro's reliance on the COVID-19 pandemic as a justification for her approach, the trial court declined to delve into the specific orders issued by the Governor or this Court, or whether those circumstances actually impacted Ferraro's approach to effectuating service of process. Nonetheless, it stated that it "believe[d] that the occurrence of the pandemic and the struggles and confusion it wrought relative to remote work and limited office access should be borne in mind as they relate to any analysis of [Ferraro]'s good faith effort to serve the Complaint on [Burger King] during this period of time." *Id*.

Finally, the trial court addressed prejudice. It stated that Burger King failed to demonstrate any prejudice resulting from Ferraro's actions given that it was on actual notice of the Complaint and lawsuit. *Id.* at 9.

In deciding Burger King's interlocutory appeal, the Superior Court stated that the trial court's opinion was "thorough and well-reasoned" in its explanation of its denial of relief. *Ferraro*, 2022 WL 1717935 at *2. Burger King argued that Ferraro was under an obligation to take action to meet her good faith burden, such as by: "(1) contacting the Sheriff's Office to ensure the complaint [was] received and being served, (2) timely and continually reinstating the complaint prior to its expiration, and/or (3) seeking leave of

court for alternative service" pursuant to Pennsylvania Rule of Civil Procedure 430. Burger King's Superior Court Brief, at 32-35. In support of requiring Ferraro to continually reinstate the Complaint, Burger King cited an opinion representing the view of two Justices in *Witherspoon v. City of Philadelphia*, 768 A.2d 1079, 1084 (Pa. 2001) (Zappala, J., Opinion Announcing Judgment of the Court ("OAJC")), stating that, "if service cannot be made, the process must be immediately and continually reissued until service is made." *Id.* at 33-34 (citing *Witherspoon*, 768 A.2d at 1984). In response to Burger King's arguments regarding "perceived lapses in vigilance" by Ferraro, the Superior Court noted:

> [Burger King] does not dispute that [Ferraro] followed the correct procedure in arranging service of the [C]omplaint, and that for unknown reasons, the [S]heriff failed to effect service. Further, [Burger King] does not point to any legal authority requiring the vigilant oversight it advances. Albeit in another context, our Supreme Court has refused to find a lack of due diligence where a party relied on the court system to follow procedures and deliver papers in a timely manner. *See Commonwealth v. Bradford*, 46 A.3d 693, 704-05 (Pa. 2012).[9]

*Id.* at *2 n.2. Therefore, the Superior Court adopted the trial court's opinion affirming the denial of Burger King's motion for judgment on the pleadings. *Id.* at *2-*3.

We granted review to address whether the lower courts' conclusions that Ferraro engaged in a good faith effort to properly serve Burger King such that she was excused from compliance with the Rules of Civil Procedure conflict with our precedent.[10] *Ferraro*, 290 A.3d at 645.

---

[9] In *Bradford*, this Court deemed delay that occurred as a result of the Magisterial District Judge's mistake and failure to comply with the Rules "delay beyond the Commonwealth's control," and therefore held it was not inconsistent with finding that the Commonwealth acted with due diligence under Rule 600 of the Pennsylvania Rules of Criminal Procedure. *Bradford*, 46 A.3d at 704-05.

[10] The question of whether the lower court's decision conflicts with the holdings of this Court on the issue of whether plaintiff demonstrated a good faith effort to effectuate (continued…)

## Arguments of the Parties

### Burger King's Arguments

Burger King argues that it was Ferraro's burden to prove that she made a good faith effort to effectuate service in a timely manner. Burger King asserts that timely and proper service is critical, and without it, the commencement of the action is nullified and the statute of limitations is **not** tolled. Burger King's Brief at 16. Its view is that the rules of service must be strictly followed. *Id.* at 17 (citing *Sharp v. Valley Forge Med. Ctr. & Heart Hosp., Inc.*, 221 A.2d 185, 186 (Pa. 1966)).

Burger King traces the development of the case law, deriving from *Lamp* and *Farinacci* the "good faith effort" standard and a requirement that plaintiffs "'comply with the local practice to ensure … prompt service of process.'" *Id.* at 19 (citing *Farinacci*, 511 A.2d at 759). Next, it recognizes that *McCreesh* carved an exception to this rule, "that a plaintiff should not be punished for 'technical missteps'" and distinguishes *McCreesh* here because Ferraro's counsel's conduct was not a "technical misstep." *Id.* at 19-20 (citing *McCreesh*, 888 A.2d at 674). According to Burger King, Ferraro "made **no attempt** to ensure" service was effectuated within the thirty days of filing of the Complaint. *Id.* at 21 (emphasis in original).

Burger King then highlights this Court's most recent opinion in the *Lamp* line of cases, *Gussom*, which it reads as clarifying the plaintiff's evidentiary burden to establish a good faith effort to diligently and properly effectuate service. *Id.* at 21-23 (citing *Gussom*, 247 A.3d at 1056). Burger King interprets *Gussom* as "clarifying … that *McCreesh* involved 'improper **but diligent** attempts at service.'" *Id.* at 23 (citing *Gussom*, 247 A.3d at 1057) (emphasis added). Further, it notes that the *Gussom* Court

___

service of process is a question of law for which "our scope of review is plenary, and our standard of review is de novo." *Gussom v. Teagle*, 247 A.3d 1046, 1052 n.4 (Pa. 2021) (internal citation omitted).

emphasized a plaintiff's duty of diligence by repeating it eight times in the opinion. *Id.* at 23 (citing *Gussom*, 247 A.3d at 1048, 1056-57). Relying on *Gussom*, Burger King argues that providing actual notice without engaging in a good faith effort to effectuate proper service is insufficient to meet the plaintiff's burden. That is, independent of the question of whether the plaintiff intended to stall the judicial machinery or whether the defendant was prejudiced, the plaintiff "carries an evidentiary burden to demonstrate that she met her good faith mandate." *Id.* at 24-25 (citing *Gussom*, 247 A.3d at 1057).

Burger King maintains that the burden exists even where a defendant has actual notice of the lawsuit. *Id.* at 25 (citing *Galeone v. Rodeway Inn Ctr. City*, 2021 WL 3126754 (Pa. Super. July 23, 2021) (non-precedential decision)[11]). Stated differently, it asserts that "actual notice without a good faith attempt at diligent and proper service is insufficient to meet plaintiff's burden." *Id.*at 27.

Next, Burger King argues that the "overwhelming weight of authority" requires a plaintiff to do more than simply provide a complaint to a sheriff one time to establish a good faith effort, pushing back on the Superior Court's suggestion that Burger King was arguing for "vigilant oversight." *Id.* at 27-28. In this vein, Burger King aligns its situation with that of *Englert v. Fazio Mechanical Services, Inc.*, 932 A.2d 122 (Pa. Super. 2007), in which the plaintiff timely filed a complaint and forwarded it to the sheriff for service. There, like here, the sheriff did not effectuate service. Subsequently, six days after expiration of the statute of limitations, the plaintiff filed a praecipe to reinstate the complaint. The trial court dismissed the action, and in affirming, the Superior Court faulted

---

[11] In *Galeone*, the plaintiff commenced an action by filing a complaint nearly a year before the statute of limitations date. Still within the statute of limitations but months after filing the complaint, plaintiff effected service of original (lapsed) process on the defendants. *Galeone*, 2021 WL 3126754 at *2. Then more than nine months passed (including the statute of limitations date), during which time, plaintiff did not reinstate his complaint or effectuate proper service. *Id.* at *9. The Superior Court panel concluded that the plaintiff's conduct did not qualify as a good faith effort to accomplish service of process. *Id.*

plaintiff because she "took no action … to ascertain whether service was properly made." *Id.* at 28-29 (citing *Englert*, 932 A.2d at 126-27). The court rejected plaintiff's contention that "[t]he filing of a praecipe and the delivery of the writ one time is all that the law requires[,]" explaining that the plaintiff's position was "quite simply, contrary to the case law in this [C]ommonwealth." *Id.* at 29 (citing *Englert*, 932 A.2d at 127). According to Burger King, the plaintiff's responsibility to take greater action to make a good faith effort to serve the complaint is confirmed by a plethora of case law. *Id.* at 29-31.[12] It asserts that Ferraro cannot cite a single case to the contrary. *Id.* at 31-32.

Burger King asserts that the Superior Court panel disregarded the plethora of authorities it cites and instead relied on *Bradford*, which it highlights was from "**another context**." *Id.* at 32 (emphasis added). After recounting the Rule 600 issue raised in *Bradford*, Burger King recounts that the error in that case was "that of the magisterial court" and "not the party." *Id.* at 33. It notes that the prosecutor in *Bradford* had demonstrated due diligence through evidence of its internal tracking system, in accordance with this Court's observation that "'**Practicing lawyers must maintain docket books to make sure that they** appear in court on the right date, file pleadings on time, complete discovery in a timely fashion, and **do not run afoul of statutes of limitations**.'" *Id.* at 33 (citing *Bradford*, 46 A.3d at 704 (internal citations omitted)) (emphasis added).

Burger King derives a "common theme" from the precedent: the plaintiff bears the burden of establishing that "she made a good faith effort to diligently and properly serve the complaint, which requires more than sending one piece of mail to the sheriff." *Id.* at

---

[12] In support, it cites the OAJC in *Witherspoon*, 768 A.2d at 1079, as well as a string of non-precedential decisions from the Superior Court. *See, e.g., Galeone*, 2021 WL 3126754; *Soisson v. Green*, 2020 WL 7663837 (Pa. Super. 2020) (non-precedential decision).

33-34. It alleges that to meet her burden, Ferraro should have followed up with the Sheriff's Office or checked the available public docket and that her failure to do so "belies a good faith effort to ensure diligent and proper service of a complaint." *Id.* at 34.

As it did at argument before the trial court, Burger King notes that the law provides "alternative options" of which Ferraro could have availed herself, starting with following up with the Sheriff's Office. *Id.* at 35-36. It also suggests that she could have sought leave of court for alternative service pursuant to Pa.R.C.P. 430. *Id.* at 37-38. Burger King also proposes that Ferraro could have immediately and continuously reinstated her complaint, an approach Burger King states was "endorsed… in *Witherspoon* where [this Court] stated: 'if service cannot be made, the process **must** be immediately and continually reissued until service is made.'" *Id.* at 38 (citing *Witherspoon*, 768 A.2d at 1084 (OAJC) (emphasis added by Burger King)[13]). Burger King concludes by arguing that condoning Ferraro's counsel's conduct would erode the requirements that this Court has established through rule and case law for timely and proper service. *McCreesh*, it argues, is not "sufficiently elastic to include within technical noncompliance a total lack of diligence" to ensure that service is made. *Id.* at 40-41.

**Ferraro's Arguments**

Ferraro insists that she met the burden of establishing a good faith effort to effectuate service. Ferraro's Brief at 13. Ferraro believes that her case "fits squarely within the reasoning" of *McCreesh* and that she has satisfied the good faith effort standard more recently annunciated in *Gussom*. *Id.* at 18-20.

At points, she suggests a different view of the case law, interpreting it to mean that so long as a plaintiff does not engage in a course of conduct designed to stall the litigation

---

[13] As discussed below, a majority of the Court in *Witherspoon* rejected adoption of an "immediate and continuous" requirement. Only two Justices endorsed the requirement.

set in motion by the filing of a complaint, the commencement of the action remains valid and the statute of limitations is tolled. *Id.* at 14 (citing *Lamp*, 366 A.2d at 885; *McCreesh*, 888 A.2d at 674; and *Farinacci*, 511 A.2d at 759-60). Though Ferraro argues that this has been the status of the law since *Lamp*, she also concedes that *Gussom* sets a standard requiring a plaintiff to "make a good faith effort to diligently and timely serve original process upon a defendant." *Id.* at 19 (summarizing *Gussom*, 247 A.3d at 1057). She emphasizes that the Court has twice, first in *McCreesh* and subsequently in *Gussom*, corrected "stricter requirements" that were being imposed by lower courts in the so-called *Teamann* line of cases. *Id.* (citing *Teamann v. Zafris*, 811 A.2d 52 (Pa. Commw. 2002)).

According to Ferraro, the goal of a statute of limitations is to "expedite litigation and thus discourage delay and the presentation of stale claims which may greatly prejudice the defense of such claims." *Id.* at 17 (citing *McCreesh*, 882 A.2d at 671). The cases, she contends, provide that the real foe is strategic delay and that plaintiffs should not be penalized with the extreme measure of dismissal for "technical missteps" where the "purpose of the statute of limitations" is satisfied by giving a defendant actual notice. *Id.* at 17-18. She faults Burger King for citing to cases which pre-date controlling cases from this Court and for citing cases following a stricter approach to good faith, which this Court expressly rejected in *McCreesh*. *Id.* at 20 (citing inter alia, *McCreesh*, 888 A.2d at 674 (rejecting "the rigid compliance of the *Teamann* line of cases" as inconsistent with the plain language of Rule 401, the spirit of *Lamp* and the admonition of Rule 126 to construe liberally the rules of procedure)).

Ferraro cites *Gussom*'s burden-shifting framework, which provides that once a plaintiff establishes that he or she made a good faith effort to comply with Rule 400, the defendant must show prejudice suffered or an intent to stall the "judicial machinery." *Id.* at 20-21 (citing *Gussom*, 247 A.3d at 1057). She argues based on the facts of record

that she satisfied her burden of proving that she acted with good faith. She properly forwarded the Complaint to the Sheriff, and she took action immediately upon realizing the Sheriff had not served Burger King with the Complaint. She asserts that the record of private service shows that she engaged in a good faith effort to provide the defendant with notice of the commencement of the action and also that she had no intention of stalling the legal machinery. *Id.* at 20-21. Having met her good faith burden, Ferraro insists that the burden shifted to Burger King, yet it has failed to meet its burden of proving that it suffered prejudice.

She distinguishes her case from *Farinacci* and *McCreesh* in that those cases involved the filing of a writ with no further action, whereas here, she filed a Complaint and undertook a genuine effort to serve Burger King with it. *Id.* at 21-22. In sum, Ferraro advances two errors in Burger King's argument: first, that it is attempting to create a higher standard not supported by the case law "impos[ing] an ongoing duty to continually follow up and check" to establish good faith; second, that Burger King's claim of prejudice is unsupported by the record. *Id.* at 22-23.

Ferraro defends the lower courts' decisions as consistent with the law and accuses Burger King of misstating or misconstruing the controlling case law to require continuous monitoring for proper service and exhausting every option for service. *Id.* at 23-25. She calls Burger King's reliance of *Englert* "telling," as it pre-dated *Gussom* by fifteen years and involves materially distinguishable facts. *Id.* at 25. Concluding, Ferraro contends that she made a good faith attempt at service and thus, "the statute of limitations was tolled" pursuant to *Lamp*, *Farinacci*, *McCreesh* and *Gussom*. *Id.* at 26. In her view, the lower courts' decisions follow that line of cases and their rejection of a stricter rule. *Id.* at 25.

**Burger King's Reply**

In reply, Burger King contests many of Ferraro's factual allegations, which it views as indicative of her failure to act in good faith. For instance, Burger King disputes that it had timely actual notice of the lawsuit, as service was made sixty-three days after filing of the original Complaint, and the Complaint was not reinstated until months after that. Burger King's position is that the private process server was serving a Complaint that was dead on arrival, as it was served more than thirty days after it was filed. Reply Brief at 3-4. Moreover, Burger King notes that original service by a sheriff is required under Rule 400, and it would draw meaning from the fact that the rule does not permit service by any competent adult. *Id.* at 4-5.

Burger King continues to argue that it does not have to show prejudice unless Ferraro meets her burden to prove a good faith effort, just like it would not have to demonstrate prejudice if it were seeking dismissal of a lawsuit where a complaint is filed after the statute of limitations. *Id.* at 6-10. It maintains that this is the sensible order of operations and Ferraro's contrary protocol would require too much of a defendant. Namely, under Ferraro's approach, defendants would have to produce evidence to support dismissal of untimely complaints, and dismissal would only be granted following timely and expensive discovery and a motion for summary judgment. According to Burger King, this would turn the purpose of the statute of limitations and the Rules of Civil Procedure on their heads. *Id.* at 9.[14]

Finally, Burger King disputes Ferraro's reliance on the early 2020 COVID-19 pandemic closures as an excuse for lack of diligence, as the Butler County Sheriff did not

---

[14] Burger King also argues that approving of the defective service in this case would erode the requirements for timely and proper service as it has uncovered other instances in which Ferraro's counsel has utilized private service more recently. Burger King's Brief at 10-11. That evidence was not considered by the trial court in making its good faith determination, and we do not consider it.

stop process serving during that time. *Id.* at 12-13. Similarly, it notes that there was no apparent reason for Ferraro to wait until November to reinstate the Complaint. *Id.* at 13.

**Legal Background**

The General Assembly has established that "[a]n action, proceeding or appeal must be commenced within the time specified in or pursuant to" the Judicial Code. 42 Pa.C.S. § 5501(a). Section 5524 of the Judicial Code specifies two years as the maximum amount of time for a plaintiff to commence a negligence action.[15] A matter is commenced for the purposes of the statute of limitations "when a document embodying the matter is filed" in the appropriate office. 42 Pa.C.S. § 5503. Significantly, this Court's Rules of Civil Procedure provide:

**Rule 1007. Commencement of Action**

An action may be commenced by filing with the prothonotary:

(1) a praecipe for a writ of summons, or

(2) a complaint.

Pa.R.C.P. 1007.

The predominant purpose of statutes of limitations is to prevent stale claims so that the defense of such claims is minimally prejudiced, particularly by the destruction or degradation of evidence. *Insurance Co. of North America v. Carnahan*, 284 A.2d 728, 729 (Pa. 1971) (providing that "the purpose of any statute of limitations is to expedite litigation and thus discourage delay and presentation of stale claims which may greatly prejudice defense of such claims … such statutes are vital to the welfare of society and are favored in the law"). Consistent with our jurisprudence, the United States Supreme Court explained that statutes of limitations "are designed to promote justice by preventing

---

[15] 42 Pa.C.S. § 5524(2).

surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348-49 (1944).

Whereas the statute of limitations, with its predominant aim to prevent stale claims, is tolled by commencement of an action by complaint or writ, service of this original process is a necessary "prerequisite to investing a court with personal jurisdiction over the defendant." *Lamp*, 366 A.2d at 892 (Pomeroy, J., dissenting). "Service of process is a mechanism by which a court obtains jurisdiction of a defendant, and therefore, the rules concerning service of process must be strictly followed." *Cintas Corp. v. Lee's Cleaning Services, Inc.*, 700 A.2d 915, 917-18 (Pa. 1997). Importantly, "without valid service, a court lacks personal jurisdiction of a defendant and is powerless to enter judgment against him or her[.]" *Id.* Validity of service is essential, and failure to perfect service is fatal to a lawsuit.

We have also recognized that service of process and our rules governing how service is accomplished serve a dual purpose. In addition to being a prerequisite to investing a court with personal jurisdiction over the defendant, "service of process has as its purpose notice to the named defendant that he has been brought into court as a party in a lawsuit and must take appropriate steps in defense. Unless he has validly waived notice, anyone against whom the heavy hand of litigation is raised is entitled to no less." *Lamp v. Heyman*, 366 A.2d at 484 (Pomeroy, J., dissenting); *see also id.* at 486 (Roberts, J., dissenting); *McCreesh*, 888 A.2d at 674 (defendant must be given notice that action has been commenced and this Court has adopted rules governing service of process to ensure such notice).

As relevant to this matter, the manner of service is controlled by Rule 400, which provides that "original process[16] shall be served within the Commonwealth only by the sheriff." Pa.R.C.P. 400(a). Rule 401 prescribes the time for service and identifies the process to be served:

**Rule 401. Time for Service. Reissuance, Reinstatement, and Substitution of Original Process.**

(a) Original process shall be served within the Commonwealth within 30 days after the issuance of the writ or the filing of the complaint.

(b)(1) If service within the Commonwealth is not made within the time prescribed by subdivision (a) of this rule or outside the Commonwealth within the time prescribed by Rule 404, the prothonotary upon praecipe and upon presentation of the original process, or a copy thereof, shall continue its validity by designating the writ as reissued or the complaint as reinstated.

(2) A writ may be reissued or a complaint reinstated at any time and any number of times. A new party defendant may be named in a reissued writ or a reinstated complaint only if the writ or complaint has not been served on any defendant.

(3) A substituted writ may be issued or a substituted complaint filed upon praecipe stating that the former writ or complaint has been lost or destroyed.

(4) A reissued, reinstated, or substituted writ or complaint shall be served within the applicable time prescribed by subdivision (a) of this rule or by Rule 404 after reissuance, reinstatement, or substitution.

(5) If an action is commenced by writ of summons and a complaint is thereafter filed, the plaintiff, instead of reissuing the writ, may treat the complaint as alternative original process and as the equivalent for all purposes of a reissued

---

[16] Under our Rules of Civil Procedure, "original process" refers to the filings that qualify for the commencement of an action: a writ of summons or complaint. Service of original process is distinguished from the service of other legal papers. Pa.R.C.P. 440-449.

> writ, reissued as of the date of the filing of the complaint.
> Thereafter the writ may be reissued, or the complaint may be
> reinstated as the equivalent of a reissuance of the writ, and
> the plaintiff may use either the reissued writ or the reinstated
> complaint as alternative original process.
>
> Note: If the applicable time has passed after the issuance of
> the writ or the filing of the complaint, the writ must be reissued
> or the complaint reinstated to be effective as process. Filing
> or reinstatement or substitution of a complaint which is used
> as alternative process under this subdivision, has been held
> effective in tolling the statute of limitations as the reissuance
> or substitution of a writ.

Pa.R.C.P. 401 and note.[17]

Rule 402 describes the manner of service. It requires service of the complaint "by handing a copy to the defendant" or by handing a copy to a specified adult at the defendant's residence or an agent or person in charge at the defendant's office or place of business. Pa.R.C.P. 402. Rule 405 requires the Sheriff to file with the Prothonotary a return of service or a return of no service, Pa.R.C.P. 405(e), and to mail to the party requesting service a copy of the return filed. Pa.R.C.P. 405(g).

If service cannot be made under the applicable rule, Rule 430 specifically authorizes a plaintiff to "move the court for a special order directing the method of service." Pa.R.C.P. 430(a). According to Rule 430, "[t]he motion shall be accompanied by an affidavit stating the nature and extent of the investigation which has been made to determine the whereabouts of the defendant and the reasons why service cannot be made." *Id.*[18]

---

[17] There have been three amendments to Rule 401(B)(1) since Ferraro commenced this lawsuit, none of which impacts the resolution of this appeal.

[18] The note to Rule 430(a) provides, in relevant part:

> Note: A sheriff's return of "not found" or the fact that a
> defendant has moved without leaving a new forwarding

(continued…)

In *McCreesh*, this Court addressed what constitutes a "good faith effort by a plaintiff to effectuate notice to a defendant of the commencement of an action." *McCreesh*, 888 A.2d at 665. The facts were as follows: McCreesh suffered a serious injury when a tree, on property owned by the City of Philadelphia (the "City"), fell on him. *Id.* McCreesh commenced the litigation by filing a praecipe to issue a writ days before the two-year limitation period would run and provided the City with original process by certified mail the following day and within the statute of limitations. *Id.* at 666. This method of service is not envisioned by the applicable Rule for service of process in the City, which requires process to be served "within the county by the sheriff or a competent adult."[19] *Id.* (citing Pa.R.C.P. 400.1). A receptionist at the City Law Department received the certified mail and signed for the package. *Id.* at 666. There was no further correspondence until approximately three months later (i.e., three months beyond the original statute of limitations period), when McCreesh filed his complaint, requested the

---

address is insufficient evidence of concealment. *Gonzales v. Polis*, 357 A.2d 580 (Pa. Super. 1976). …

An illustration of a good faith effort to locate the defendant includes (1) inquiries of postal authorities including inquiries pursuant to the Freedom of Information Act, 39 C.F.R. Part 265, (2) inquiries of relatives, neighbors, friends, and employers of the defendant, (3) examinations of local telephone directories, courthouse records, voter registration records, local tax records, and motor vehicle records, and (4) a reasonable internet search.

Pa.R.C.P. 430(a), note.

[19] Relevantly, Rule 400.1 provides that "[i]n an action commenced in the First Judicial District, original process may be served (1) within the county by the sheriff or a competent adult[.]" Pa.R.C.P. 400.1(a)(1). This Court declined to grant review of the Commonwealth Court's other holding, i.e., whether delivery by certified mail satisfied the requirements for service by hand delivery by a competent adult pursuant to Pa.R.C.P. 400.1 and 402. *McCreesh*, 888 A.2d at 668 n.9.

writ's reissuance and served the City properly by hand delivery by a competent adult pursuant to Rule 400.1. *Id.* at 666-67. On preliminary objections, the City asserted that delivery of the writ by certified mail did not comply with Rule 400.1, and that the complaint was not filed within the two-year limitations period. *Id.* at 667. McCreesh asserted that the service was proper, arguing inter alia, that service by certified mail is service by a competent adult. The trial court denied the City's preliminary objections, concluding that the presentation of the writ to the City by certified mail was a good faith effort. The Commonwealth Court reversed on the basis that McCreesh's attempt at service did not strictly comply with Rule 400.1. *Id.* at 669.

We granted allowance of appeal to address whether the defective service "constituted a good faith effort to effectuate notice" under our precedent. *Id.* at 668 n.9. The *McCreesh* Court stated that it is self-evident that once an action is commenced, "the defendant must be provided notice of the action in order for the purpose of the statute of limitation to be fulfilled." *McCreesh*, 888 A.2d at 671. To effectuate the purpose of the statute of limitations, the *McCreesh* Court explained, this Court has set forth rules governing service of process to ensure such notice. *Id.* (citing Pa.R.C.P. 400-430). We recounted that Rule 401 requires service of original process within thirty days of the filing of the complaint or issuance of the writ, and that "the claim remains valid so long as the plaintiff complies with the procedures of subsection (b), which allows for reissuance of the writ at 'any time and any number of times.'" *Id.* (citing Pa.R.C.P. 401(b)). The *McCreesh* Court highlighted that the plain language of the rule allows a plaintiff to commence an action by filing a complaint, "thereby satisfying the statute of limitations, and yet to delay the provision of notice of the claim to the defendant interminably, thus undermining the purpose of the statute of limitations." *Id* at 671 (citing *Lamp*, 366 A.2d at 888-89).

In an effort to curb this practice, the Court developed the "equivalent rule." The statute of limitations sets a date certain before which a plaintiff had to file a complaint or praecipe for a writ of summons. Under the equivalent rule, once the plaintiff has filed a writ of summons or complaint within the statute of limitations period, the plaintiff has an additional period of time equivalent to the statute of limitations in which to reissue the writ or complaint and effectuate service of process. *McCreesh*, 888 A.2d at 671-72 & n.16 (citing *Zarlinsky v. Laudenslager*, 167 A.2d 317, 319 (Pa. 1961)). The equivalent rule imposes "a rule of limitation for the continuing of process to keep alive an action by analogy to the statute of limitations for the bringing of an action." *Zarlinsky*, 167 A.2d at 319.

The equivalent rule was subsequently modified to require a plaintiff to engage in a good faith effort to effectuate service of process. In 1976, the *Lamp* Court was concerned that plaintiffs' attorneys were customarily filing praecipes for writ of summons to toll the statute of limitations and then delaying or preventing service upon defendants. *Lamp*, 366 A.2d at 886. In that case, for instance, the plaintiff filed the praecipe for writ of summons days before expiration of the statute of limitations, then wrote special instructions for the prothonotary to "hold" and delay service. We changed the equivalent rule prospectively to prevent future abuses. *Id*. We stated that "[o]ur purpose [was] to avoid the situation in which a plaintiff can bring an action, but, by not making a good faith effort to notify a defendant, retain exclusive control over it for a period in excess of that permitted by the statute of limitations." *Id*. at 889. The *Lamp* Court established that going forward, "a writ of summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion." *Id*.

The *McCreesh* Court observed that *Lamp*'s holding was "subtly altered" in *Farinacci*. *McCreesh*, 888 A.2d at 672. In *Farinacci*, plaintiff's counsel commenced an action in negligence for personal injuries on the final day to commence such an action by filing a praecipe for writ of summons. *Farinacci*, 511 A.2d at 759. Service was not effectuated within thirty days of issuance of the praecipe. Over a month after the original statute of limitations run date, the writ was reissued and personal service was made on all defendants. *Id.* at 758. In asserting good faith, the plaintiffs in *Farinacci* relied only on counsel's misplacing his file and his faulty memory. We deemed this explanation inadequate, observing that the plaintiffs failed to provide an explanation for counsel's inadvertence to "substantiate a finding that plaintiffs made a good faith effort to effectuate service of the writ[.]" *Id.* at 760. Significantly, "plaintiffs are required to comply with local practice to ensure, insofar as they are able, prompt service of process[.]" *Id.* at 759. Therefore, the *Farinacci* Court affirmed the lower court's grant of defendants' preliminary objections and solidified *Lamp*'s good faith effort of service of process requirement.

Notably, the *McCreesh* Court drew attention to the dissent in *Farinacci*, which would not have imposed a good faith burden on plaintiffs but instead would have focused on the reasonableness of the plaintiff's conduct measured by the plaintiff's intention to stall the legal proceedings. *Farinacci*, 511 A.2d at 760 (Zappala, J., dissenting) (stating that the *Lamp* decision "clearly evinces an intention to permit a party to demonstrate that his actions have not unreasonably stalled the legal proceedings he initiated[]"). The dissent found that there was no showing of intent to stall the proceedings and that the defendant was not prejudiced by the delay in proper service because it had been made aware of plaintiff's claim for a year before the lawsuit was filed. After drawing attention to this point, the *McCreesh* Court distinguished *Farinacci* on the facts by pointing out that

unlike the case before it, the defendant in *Farinacci* had notice of the "potential for litigation" and not "the commencement of litigation." *McCreesh*, 888 A.2d at 672 n.17.

The *McCreesh* Court then recounted that the Court again addressed the *Lamp* rule in a plurality decision in *Witherspoon*. *Witherspoon*, 768 A.2d at 1079-80 (OAJC). In *Witherspoon*, this Court addressed faulty service arising out of a slip and fall incident at a Philadelphia prison. Well before the statute of limitations ran, Witherspoon's counsel informed the City of Philadelphia of the claim, though he waited until the last week of the statutory period to file a praecipe for a writ of summons. *Id*. An attempt to serve the writ was unsuccessful, with the process server failing to file a return of service/return of no service. *Id*. at 1080. Then, nearly nine months after the original statute of limitations run date, Witherspoon's counsel filed a complaint, which was served promptly. *Id*. The City filed preliminary objections asserting that that the failure to serve the writ within thirty days as required by Pa.R.C.P. 401(a) or reissue it pursuant to Pa.R.C.P. 401(b)(1) "effectively end[ed] any extension of the two [] year statute of limitations which expired on September 17, 1996." *Id*. at 1080.

Five Justices affirmed the trial court's dismissal of the complaint in *Witherspoon*, finding that the plaintiff did not act in good faith where he made only one unsuccessful attempt to serve the defendant in nine months before he successfully effectuated service. *Witherspoon*, 768 A.2d at 1079 (OAJC), *id*. at 1084 (Saylor, J., concurring). Although five Justices agreed to the lack of good faith, they could not reach a consensus on the appropriate test. Justice Zappala, joined by Justice Flaherty, deemed it inherently unfair to permit the limitation period to be tolled when the defendant is not apprised that he is subject to liability. *Id*. at 1083. He compared the matter to *Farinacci*, recounting that counsel's inadvertence led to the lapse of time without service in that case. *Farinacci*, 511 A.2d at 760. By comparison, the "inadvertence" in *Witherspoon* which allowed the

lapse of time without service was "attributable to the process server's failure to make additional attempts until service was made, his failure to make and file a return of no service 'forthwith' as required by Rules 405(a) and (e), and/or counsel's failure to promptly ascertain the results of the process server's efforts[.]" *Witherspoon*, 768 A.2d at 1083 (OAJC). Justice Zappala concluded that Witherspoon was bound by the actions of the private process service just as the plaintiff in *Farinacci* was bound by counsel's inadvertence. *Id.* "Since the writ was not served within thirty days, the condition necessary to complete the timely commencement of the action was not fulfilled." *Id.*

Significantly, an effort to "reassess the wisdom of the 'equivalent period' doctrine," was proposed by the OAJC in *Witherspoon* and rejected by five other Justices. The OAJC found the equivalent rule to be inconsistent with the plaintiff's good faith burden and policy underlying limitations periods. *Witherspoon*, 768 A.2d at 1084 (OAJC). It would have adopted a new rule in its place for actions which "straddle the line" of the statute of limitations period: "the process must be served within the time allowed by the Rules of Civil Procedure or, if service cannot be made, the process must be immediately and continually reissued until service is made." *Id.* However, neither the three Justices in the Concurrence nor the two Justices in the Dissent endorsed reevaluation of the equivalent period doctrine in *Witherspoon* or adoption of a rule requiring a plaintiff to "immediately and continuously" reissue process until service is made to toll the applicable period of limitations. *See id.* at 1084 (Saylor, J., concurring); *id.* at 1085-88 (Newman, J., dissenting). The Concurrence opined that the failure to prosecute claims diligently would be better regulated by promulgation of a new rule of civil procedure. It drew attention to

the Federal Rules of Procedure which provide for such a regulation.[20] *Id.* at 1084 (Saylor, J., concurring).

After reviewing *Zarlinsky*, *Lamp*, *Farinacci* and *Witherspoon*, the *McCreesh* Court observed that the Commonwealth Court and Superior Court had at that time "formulated inconsistent rules, sometimes dismissing cases due to plaintiffs' failure to comply strictly with the Rules of Civil Procedure and on other occasions reserving the drastic measure of dismissal for only those cases where the defendant has been prejudiced by plaintiff's failure to comply with the rules." *McCreesh*, 888 A.2d at 673-74 (internal citations omitted). It concluded that a rigid compliance requirement was "incompatible with the plain language of Rule 401, the spirt of *Lamp*, and the admonition of Rule 126 to construe liberally the rules of procedure so long as the deviation does not affect the substantial rights of the parties." *Id.* at 674. The *McCreesh* Court observed that the *Lamp* Court had sought to alleviate hardships caused by plaintiffs who exploited the rules of civil procedure by making "an end run around the statute of limitations." *Id.* But, according to *McCreesh*, neither our cases nor rules contemplate punishing a plaintiff "for technical missteps where he has satisfied the purpose of the statute of limitations by supplying a defendant with actual notice." *Id.* The inflexible line of cases we were rejecting had required strict compliance with the Rules of Civil Procedure in a manner reminiscent of "draconian

---

[20] At that time, Rule 4(m) provided:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.C.P. 4(m). Rule 4(m) has been amended to require service within 90 days. *Id.*

procedures" of the past which imposed "an objective bright line standard of compliance that is wholly inconsistent with the concept of good faith." *Id.* Therefore, the Court embraced the logic of the more flexible lines of cases in our intermediate appellate courts, which, "applying *Lamp*, would dismiss only those claims where plaintiffs have demonstrated an intent to stall the judicial machinery or where plaintiffs' failure to comply with the Rules of Civil Procedure has prejudiced the defendant." *Id.*[21] The Court noted that "there may be situations where actual notice may not be absolutely necessary so long as prejudice did not result," but declined to delineate the exception given the issue was not before the Court. *Id.* at 674 n.20. We thus reversed the Commonwealth Court based on the fact that McCreesh "supplied the City with actual notice[,]" and we remanded to the Commonwealth Court to address whether the City suffered prejudice as a result of the delay. *Id.* While *McCreesh* emphasized the importance of actual notice to the City, that fact should not be disengaged from the other facts of record supporting a good faith effort to comply with the rules of service. Plaintiff argued that his certified mail to the City was compliant with the Rule requiring service by a competent adult and emphasized the trial court's finding that this attempt at service was a good faith effort.

*McCreesh* focused on disavowing courts of the notion that plaintiff's counsel was required to establish absolute technical adherence with the Rules of Civil Procedure, but it did not relieve plaintiff's counsel of the burden to make a good faith effort to effectuate service of process pursuant to the Rules.

*McCreesh* was not the first case to refer to a "good faith effort to notify a defendant." For instance, the Court in *Lamp* referred to the requirement that a plaintiff make a "good faith effort to notify a defendant[.]" *Lamp*, 366 A.2d at 889. Subsequent

---

[21] Notably, in summarizing *Lamp*, *Farinacci*, and *Witherspoon*, the *McCreesh* Court repeatedly recited the burden borne by the plaintiff to demonstrate "a good-faith effort to effectuate notice of commencement of the action." *McCreesh*, 888 A.2d at 671-73.

opinions in *Farinacci* and *Witherspoon* used "notice" and "notify" interchangeably with service of process.[22] However, as in *McCreesh*, each of those cases involved attempts at service of process as contemplated by the Rules of Civil Procedure and not an effort by plaintiff to notify a defendant that a lawsuit had been filed, disconnected from an actual attempt at service of process as provided by the Rules. A contrary reading allowing a plaintiff to ignore the service rules and give notice to defendant that an action had been commenced in any manner she chooses undermines a recognized purpose of our service of process rules to give notice to a defendant and creates uncertainty.

*Gussom v. Teagle*, 247 A.3d 1046 (Pa. 2021), clarified this Court's holding in *McCreesh*. We recharacterized the inquiry from one requiring a plaintiff to prove a "good faith effort to effectuate **notice**[,]" *McCreesh*, 888 A.2d at 672 (emphasis added), to one requiring the plaintiff "to prove that she made a good faith effort to effectuate **service of process** in a timely manner." *Gussom*, 247 A.3d at 1056 (emphasis added).

Following a car accident with a two-year statute of limitations, Gussom filed a complaint asserting that Teagle's negligence caused the accident and that she suffered injuries as a result. *Id.* at 1049. Within the two-year period, in April 2018, Gussom filed the complaint, and thereafter, an affidavit of non-service, explaining that she attempted to serve the complaint on Teagle at an address in Philadelphia but learned that Teagle had sold the house and moved to Virginia. In August 2018, "nearly a month after the statute of limitations would have expired but for the filing of the complaint," Gussom filed a praecipe to reinstate the complaint. *Id.* Teagle filed preliminary objections citing, inter

---

[22] *See, e.g., Farinacci*, 511 A.2d at 759 (referring to plaintiffs' "good-faith effort to effectuate notice of commencement of the action[]" and "good-faith effort to effectuate notice"); *Witherspoon*, 768 A.2d at 1083 (OAJC) (referring to standard as requiring determination of whether a "good-faith effort to effectuate notice was made") (internal citation omitted); *id.* at 1084 (OAJC) (referring to "good faith attempt to notify the defendant of the action"); *id.* at 1086 (Newman, J., dissenting) (referring to "good-faith effort to serve the defendant").

alia, the inadequate service.  In response to the preliminary objections, Gussom did not file a response or attempt to prove that she engaged in a good faith effort to timely serve the complaint.  Rather, Gussom merely filed another praecipe to reinstate her complaint.  *Id.*

After recounting the line of cases including *Lamp*, *Farinacci*, and *McCreesh*, the *Gussom* Majority enunciated the burden-shifting framework:

> *Lamp* and its progeny require a plaintiff to make a good faith effort in diligently and timely serving process on a defendant. When a defendant presents a factual dispute as to whether a plaintiff fulfilled this duty, the plaintiff carries an evidentiary burden to demonstrate that she met her good faith mandate. If a plaintiff presents credible evidence that she made this attempt at service, then she fulfills her requirement to prove good faith. If a plaintiff does not present such evidence, then she has failed to satisfy her evidentiary burden, regardless of whether her actions (or inaction) were intentional, unintentional, or otherwise.  However, pursuant to *McCreesh*, a trial court should not punish a plaintiff by dismissing her complaint where she is able to establish that her **improper but diligent attempts at service resulted in the defendant** receiving actual notice of the commencement of the action, unless the plaintiff's failure to serve process properly evinced an intent to stall the judicial machinery or otherwise prejudiced the defendant.

*Id.* at 1057 (emphasis added).

The Majority applied the rule to the facts:  Gussom timely commenced the action by filing a complaint.  In meeting the requirement that she act diligently in serving original process, Gussom filed only an affidavit of non-service in the trial court (which reflected an unsuccessful attempt at service).  The affidavit indicated that she attempted to serve the complaint at a specific address.  She subsequently learned that Teagle had sold the house at that address a year-and-a-half earlier and moved to Virginia.  The docket reflected that Gussom did nothing else until she filed the praecipe to reinstate the complaint a month beyond expiration of the original statute of limitations run date.  When

Teagle promptly filed preliminary objections raising the question of whether Gussom fulfilled her legal duty to make a good faith effort to serve the complaint, Gussom "had an obligation to produce evidence to demonstrate that she met this duty; yet she offered no such evidence." *Id*. at 1057. Based on this record, we found no abuse of discretion in the dismissal of the complaint. Gussom "failed to prove that she acted diligently in attempting to make her good faith effort to serve [Teagle] with notice that she filed her complaint against him." *Id*. "Moreover," there was no evidence that Gussom's actions or inactions gave Teagle actual notice of the lawsuit in a timely manner. *Id*. We also noted that it was unclear whether Gussom ever properly served her complaint on Teagle. *Id*. at 1058 n.7. Therefore, we held that "a trial court has the discretion to dismiss a complaint when a plaintiff fails to offer proof that she diligently attempted to serve process on a defendant in a timely manner and there is no evidence to indicate that the defendant had actual notice of the commencement of the action in the relevant time frame, regardless of whether the plaintiff acted or failed to act intentionally." *Id*. at 1048 (emphasis added).

In Dissent, three Justices (including this Author) took a different view of the precedent. The Dissent interpreted *McCreesh* as a "significant departure from *Farinacci* and *Witherspoon*[,]" according to which plaintiffs could demonstrate good faith "through proof of actual notice, however informal or technically deficient[.]" *Gussom*, 247 A.3d at 1060 (Wecht, J., dissenting). In significant contrast to the Majority, the Dissent viewed "*McCreesh* as unmistakably shifting the burden to defendants to affirmatively demonstrate plaintiffs' intent to stall the judicial process or prejudice resulting from their failure to comply with the Rules of Civil Procedure in order to secure dismissal of a civil action." *Id*. According to the Dissent, "plaintiffs' inadvertent mistakes are no longer sufficient to warrant dismissal." *Id*. Instead, the Dissent read *McCreesh* as a reversion to the threshold inquiry established in *Lamp*: "namely, has the plaintiff 'refrain[ed] from a

course of conduct which serves to stall in its tracks the legal machinery he has just set in motion'? *Lamp*, 366 A.2d 889." *Id.* Applying its test to the facts, the Dissent observed that Gussom made four attempts to effect service of Teagle months prior to expiration of the statute of limitations.[23] *Id.* at 1060. Further, Teagle's counsel had entered his appearance upon receiving notice of the complaint from Teagle's insurance carrier. *Id.* at 1060-61. Though it recognized that sending a complaint to an insurance carrier is insufficient to effectuate service under the Rules of Civil Procedure, the Dissent saw no good reason why it would not suffice to establish a plaintiff's good faith effort to serve the defendant when it resulted in actual notice to the defendant of the pending litigation. *Id.* at 1061. Given that Gussom ultimately made actual service and there was no evidence of an intent to stall or prejudice to Teagle, the Dissent would have reinstated the complaint. *Id.* at 1061. The divergent interpretation of *McCreesh* espoused by the Dissent having been rejected, there can be no question that when a plaintiff relies on actual notice to a defendant that an action has been commenced, that actual notice has to be the result of a good faith, but improper, effort at service of process under the Rules.

**Analysis**

Since *Zarlinksy*, this Court has struggled to find the appropriate balance between, on the one side of the scale, respect for statutes of limitations and, on the other side of the scale, monitoring plaintiffs' conformity with our Rules of Civil Procedure prescribing how to commence an action, thereby tolling the statute of limitations; how to effectuate service of process on a defendant thereby conferring the court's jurisdiction over the defendant and providing notice to the defendant of the filing of a lawsuit against it; and

---

[23] These facts were presented in Gussom's motion for reconsideration which the trial court denied, and the *Gussom* Majority refused to consider. *Gussom*, 247 A.3d at 1058.

respecting the admonition of Pennsylvania Rule of Civil Procedure 126[24] to construe liberally the Rules of Civil Procedure so long as the deviation from the Rules does not affect the substantive rights of the parties. There are certain hard and fast rules. For example, an action must be commenced prior to the expiration of the statute of limitations; the statute of limitations is tolled by the timely commencement of an action which is accomplished by filing a writ or complaint; and service of original process pursuant to the Rules of Civil Procedure is required to confer the jurisdiction of the court over a defendant.

More problematic has been the development of guidance for what constitutes acceptable practice for those cases where an action is commenced prior to the expiration of the statute of limitations but service of process is not effectuated until a point in time after the statute of limitations would have expired but for the tolling that occurred because a writ or complaint was filed. This is important because absent notice to the defendant that an action has been filed, the plaintiff effectively extends the statute of limitations by maintaining exclusive control over the lawsuit as a defendant cannot garner a defense to an unknown action. Our case law has consistently recognized, from *Lamp*, through *McCreesh*, that one purpose of our service of process rules is to ensure that a defendant is put on notice that a lawsuit has been filed so that a defense can be mounted. Of course, this is the most obvious consequence of service of original process, even though it is likewise essential to attach a court's personal jurisdiction over the defendant. More

---

[24] Rule 126(a) provides:

> Application. The Rules shall be liberally applied to secure the just, speedy, and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantive rights of the parties.

pointedly, other than formal waiver of service of process,[25] our Rules of Civil Procedure do not provide for an alternative method of notifying a defendant of the commencement of an action.

The rules governing service of process are straightforward, but our case law shows that following their dictates is apparently less so. Although not totally smooth in development, and always with divided courts, we have rejected strict compliance with the Pennsylvania Rules of Civil Procedure related to service of process and settled on imposing on a plaintiff the standard of a good faith effort to effectuate service of process in the critical time frame.

*Gussom* is our most recent case addressing the confluence of an effective tolling of the statute of limitations and the failure to effectuate service of process until after the date the statute of limitations would have expired absent the commencement of the action. *Gussom* coalesced the teachings of our prior case law in this area, including *McCreesh* which, as discussed, hinged on the fact that the defendant received timely actual notice of the lawsuit even though it received such notice through a good faith attempt at service of process in a manner not authorized under our Rules.

> In sum, *Lamp* and its progeny require a plaintiff to make a good faith effort in diligently and timely serving process on a defendant. When a defendant presents a factual dispute as to whether a plaintiff fulfilled this duty, the plaintiff carries an evidentiary burden to demonstrate that she met her good faith mandate. If plaintiff presents credible evidence that she met this attempt at service, then she fulfills her requirement to prove good faith. If plaintiff does not present such evidence, then she has failed to satisfy her evidentiary burden, regardless of whether the actions (or inaction) were intentional, unintentional, or otherwise. However, pursuant to *McCreesh*, a trial court should not punish a plaintiff by

---

[25] According to Rule 402(b), "[i]n lieu of service under this rule, the defendant or his authorized agent may accept service of original process by filing a separate document which shall be substantially in" the form provided. Pa.R.C.P. 402(b).

dismissing her complaint where she is able to establish that her improper but diligent attempts at service resulted in the defendant receiving actual notice of the commencement of the action, unless the plaintiff's failure to serve process properly evinced an intent to stall the judicial machinery or otherwise prejudiced the defendant.

*Gussom*, 247 A.3d at 1057.

We apply the *Gussom* analytical framework to the undisputed facts of this appeal which we again summarize. Ferraro effectively tolled the August 26, 2020 statute of limitations in her negligence action against Burger King by filing a complaint in the Court of Common Pleas of Butler County on March 4, 2020. Immediately after commencing the action, she made one attempt at service of process pursuant to Rule 400. Cognizant that this attempt at service failed, in May 2020, Ferraro had a private process server hand deliver a copy of the original Complaint to Burger King. Ferraro's counsel candidly admits that this was not an attempt to effectuate service of process. Instead, he wanted to notify the defendant that a lawsuit has been filed. Ferraro made no attempt to effectuate service of process until November 3, 2020 (sixty-nine days after the statute of limitations would have expired but for the filing of the original Complaint) when she reinstated the Complaint. She then instructed the Sheriff to effectuate service on Burger King, which was accomplished on November 30, 2020.

Burger King challenged Ferraro's good faith effort to diligently and timely serve process on it, thus triggering plaintiff's evidentiary burden to demonstrate that she met her good faith mandate. Ferraro first posits that her initial instruction to the Sheriff is sufficient to establish her good faith effort to effectuate service of process on the defendant. In her view, even if she knew the attempt at service failed, her use of the private process server to follow up and give notice evidences that she did not intend to stall the litigation. Ferraro's Brief at 20-21. We reiterate that the good faith effort is to diligently and timely **serve process** on the defendant. Here, aside from forwarding the

Complaint for service to the Sheriff with payment, Ferraro made no efforts to inquire about or perfect service until nearly eight months after filing the Complaint and more than two months after the original date of the statute of limitations. Plaintiff's inaction in failing to effectuate service in proximity to the original statute of limitations run date is critical in the analysis of the good faith in plaintiff's efforts. Although the statute of limitations is tolled by the filing of a complaint or writ, the original date that the statute of limitations would have run is relevant because that is the moment at which the defendant is entitled to protection against stale claims. Here, that date is August 26, 2020. The vitality of the original Complaint expired in or around the end of April 2020 (thirty days after the filing of the Complaint) and no effort was made to reinstate the Complaint prior to August 26, 2020. The Complaint was not reinstated and instructions for service were not reissued until November 3, 2020 (sixty-nine days after the original statute of limitations expired). Ferraro produced no **evidence** to account for the lack of effort to effectuate service during this time period or for four months preceding it and after the original attempt at service failed.

As opposed to offering evidence to establish diligence under the circumstances, Ferraro argued that her Complaint was filed at the outset of the COVID-19 pandemic, a public health emergency recognized by declarations and orders by the Governor and orders of this Court. Instead of offering evidence that the Sheriff's Office was not effectuating service of process during the time of his attempt at service (and subsequent to it), Ferraro's counsel argued that he assumed the pandemic resulted in service of process failures. Burger King presented docket-based evidence that original process was being served during the first month of the pandemic (and thus the first month after Ferraro filed the Complaint), and Burger King produced copies of the pandemic era orders establishing that none of them impacted this litigation. While it is certainly conceivable

that the uncertainty of normal operations could have impacted the assessment of Ferraro's counsel's diligence during the health emergency, no evidence was offered that it did.[26] Moreover, Ferraro does not distinguish between the uncertainties associated with normal operations in the immediate declaration of the emergency in March 2020, and circumstances in August through November 2020. Finally, disfunction in the operations of the Sheriff's Office affecting service of process would have been an appropriate basis for a motion for alternative service of process under Pa.R.C.P. 430.

Under the facts of this case, Ferraro failed to carry her initial burden of demonstrating that she made a good faith effort to diligently and timely serve process on Burger King. One effort of service of process prior to the date on which the statute of limitations would have expired and no further effort until over two months after the expiration date is the opposite of diligence in timely serving process on the defendant.

The only remaining question is whether Ferraro has established that her improper but diligent attempts at service resulted in Burger King receiving actual notice of the commencement of the action prior to the date on which the statute of limitations would otherwise have barred the lawsuit. Ferraro made one proper but unsuccessful attempt at service prior to the statute of limitations expiration date. Instead of reinstating the Complaint and again attempting service through the Sheriff or seeking leave of court to utilize an alternative method of service, Ferraro's counsel opted to informally notify Burger

---

[26] The trial court gratuitously suggested that the impact of the COVID-19 pandemic was a consideration in its finding that Ferraro's actions or inaction met the standard of good faith attempts at service, Trial Court Opinion, 12/28/2021, at 9. Again, there was no evidence of any such impact on this plaintiff's counsel or the Butler County Sheriff's Office's ability to serve original process. Ferraro did not analyze or discuss this Court's COVID-19 era orders. We take judicial notice that the Court's mandates effecting operations of the courts expired on June 1, 2020. Even assuming an impact on Ferraro's case, her counsel took no action to reinstate the Complaint until November 3, 2020—four months later.

King that a lawsuit was filed, having a private process service deliver to Burger King a copy of the original (unreinstated) Complaint. Ferraro's counsel admittedly did not intend that the use of the process server would result in effective service of process. This was not technical non-compliance with the Rules of Civil Procedure because there was never an intent to comply with the Rules. We have never held that **any** notice to a defendant of the pendency of a lawsuit is a substitute for service of process and we refuse to do so here.[27] Our allowance of a deviation from strict compliance with our service rules when notice is imparted to the defendant is tied to a good faith effort to comply with the Rules. In *McCreesh*, we did not detach notice to the defendant of the pendency of a lawsuit from service of process. The *McCreesh* plaintiff incorrectly believed that certified mail to the defendant would effectuate service of process both in fact and by analogy of certified mail delivery to service by a competent adult. Here, Ferraro's counsel understood that the private process server could not effectuate service of process under the Rule.

As a result of the operation of Rule 126(a), we do not demand strict compliance with the service of process rules. *Gussom* clearly announced the balance between the relaxed enforcement of our rules pertaining to service of process and their purpose of providing notice to the defendant and the protections intended by statutes of limitations. When a plaintiff makes diligent but technically improper efforts to timely serve process whereby a defendant receives actual notice during the period of the statute of limitations that a lawsuit has been filed against it, the plaintiff will not be punished by dismissal of the complaint for technical non-compliance with the Rules of Civil Procedure. *Gussom*, 247 A.3d at 1057. This balance preserves service of process as the manner in which notice

---

[27] Contrary to the Dissenting Justice's perspective, we are not adding a new or additional inquiry regarding a plaintiff's good faith effort to effectuate service of process in a timely manner by looking to whether notice to the defendant was done in a way that attempted to comply with the Rules of Civil Procedure. Dissenting Op. at 10. All of our precedents in this area involve failed attempts at notice to defendants by way of methods of service of process established in the Rules. *See* supra pp. 23, 27-28.

of the commencement of an action is given to a defendant while allowing for leniency when an imperfect but good faith effort to adhere to the Rules nonetheless results in actual notice to the defendant. Short of abandoning service of process as the recognized manner in which notice of being sued in court is given, no other balance is feasible. Plaintiffs cannot opt out of the Rules to give notice of the commencement of a lawsuit by informal means. If attempts at service of process are optional for giving such notice, then no plaintiff would be required to rely on the service of process Rules to impart notice. Such a result removes the predictability of the Rules which require docketing of service and service attempts. Removing these formalities does not promote the just, speedy, or inexpensive determination of actions since notice to a defendant by methods at plaintiff's option would foment additional litigation.[28]

Applying *Gussom*, the decision of the Superior Court is reversed. Ferraro failed to meet her burden of demonstrating that she made a good faith effort in diligently and timely serving process on Burger King and thus, Burger King's informal receipt of actual notice is irrelevant.

Chief Justice Todd and Justices Dougherty and Brobson join the opinion.

Justice Wecht files a dissenting opinion in which Justice Mundy joins.

---

[28] Justice Wecht would abandon *Gussom* and announce a new test for determining whether a plaintiff effectively imparts notice of the commencement of the lawsuit by considering the plaintiff's diligence, good faith and prejudice to the defendant. Dissenting Op. at 12. Among other things, the new test divorces the concept of notice to the defendant of the commencement of an action from service of process. *Id.* at 13 ("I would find actual notice regardless of whether it was provided through a misguided attempt at service … or through a known misstep[.]"). This proposition was unsuccessfully espoused by Justice Wecht in his dissent in *Gussom*, 247 A.3d at 1061 (Wecht, J., dissenting). *See* supra pp. 30-31. Our current Rules only recognize providing notice to a defendant through specified methods of service of process. Thus, as the Dissent seems to recognize, rule changes would be necessary to accommodate the proposed new test. Dissenting Op. at 12 (echoing a call for the Civil Procedural Rules Committee to examine the Rule). However, under *Gussom* and our current Rules, this plaintiff cannot prevail.